EDWIN D. BLAIR, ADMINISTRATOR, ETC., v. FRANK L.
CARPENTER, TRUSTEE, ETC., ET AL.

[TWO CASES.]

75  167
93   56

75  167
d126  680

*Payment—Application—Evidence—Indorsement of amount of second
mortgage upon first—Foreclosure—Statute of limitations.*

1. A debtor owing two or more debts to a creditor, to whom he makes
a payment, may direct its application, but in the absence of such
direction the creditor may apply the payment upon whichever
debt he pleases.

2. Evidence showing that a second mortgage was intended to be
applied as a payment upon a prior one is admissible.

3. The indorsement by a mortgagee of a second mortgage, executed
by the mortgagor and another, as a payment upon the first
mortgage, under an agreement that it should be so treated,
comes within the provisions of How. Stat. § 8729, and saves the
debt from the operation of the statute of limitations.

4. Payment may be made in any mode which the parties agree shall
be treated as the equivalent of a money payment.

Appeal from Ottawa. (Dickerman, J., presiding.) Argued
April 3, 1889. Decided June 14, 1889.

Bills to foreclose two mortgages. Defendant Carpenter
appeals. Decrees granting relief sought affirmed. The facts
are stated in the opinion.

*Blair, Kingsley & Kleinhans,* for complainant.

*Frank L. Carpenter,* in *pro. per.,* for appellant.

LONG, J. The bills in these cases are filed to foreclose
two certain indentures of mortgage. The two cases were
heard as one in this Court, and the rights of all the parties
are so connected that they may be disposed of together. The
first bill alleged substantially that Myron Harris, now

deceased, in his life-time, and on the twenty-seventh day of September, 1858, made and delivered his promissory note to Francis Alvord, dated October 1, 1858, for $1,000, payable one year after date, with interest at 10 per cent., and to secure the payment thereof made and delivered to him an indenture of mortgage of even date upon the north-east quarter of section 22, township 7 north, range 13 west, township of Talmadge, Ottawa county, containing 160 acres of land, the execution of which mortgage was duly acknowleged on that date, and on the same day it was recorded.

That Francis Alvord was a resident of Onondaga county, New York, and departed this life there on February 10, 1885 [1] and his son, Charles G. Alvord, having been appointed administrator of his father's estate in that county on January 3, 1885, presented a petition for the appointment of the complainant as administrator of said estate to the probate court for Ottawa county, this State, and the appointment of complainant was duly made.

That on September 1, 1880, Myron Harris, who was a resident of Ottawa county, departed this life, leaving his last will and testament, which has been duly probated in said county of Ottawa; that by said will Myron Harris nominated and appointed as executors thereof and as trustees thereunder his wife, Miriam Harris, Frank L. Carpenter, and Israel V. Harris; that Miriam Harris departed this life September 13, 1880, never having qualified or acted as trustee under said will; that Frank L. Carpenter never qualified as executor; and that Israel V. Harris duly qualified as executor thereof, and that letters testamentary were duly issued to him by the probate court of Ottawa county; and that Frank L. Carpenter and Israel V. Harris are the surviving trustees thereunder.

That on February 23, 1870, Myron Harris paid upon said

---

[1] The second bill alleges Alvord's death as of February 10, 1884.

mortgage the sum of $1,706; that no other payments have ever been made thereon for either principal or interest, and that there now remains due upon said note and mortgage the sum of $1,082.82.

This bill further charges that the Stilwell & Bierce Manufacturing Company, Rollin H. Pelton, and Israel V. Harris, in his own right and as trustee and executor, and Frank L. Carpenter as trustee, have or claim to have rights and interest in said premises as subsequent purchasers or incumbrancers or otherwise.

The bill in the second case charges that on February 23, 1870, Myron Harris, now deceased, and Israel V. Harris, being indebted to said Francis Alvord, made, executed, and delived to him a certain other indenture of mortgage for the consideration of $1,456, and by said mortgage granted and conveyed to said Alvord the north-east quarter of section 27, township 7 north, range 13 west, township of Talmadge, Ottawa county, Michigan; that said mortgage was duly acknowledged, and recorded in the office of the register of deeds of Ottawa county, and that there remains due and unpaid thereon the sum of $2,983.10.

The bill also sets out the death of Francis Alvord, the appointment of complainant as administrator, etc., the death of Myron and Miriam Harris, the making of the will by Myron Harris appointing the above named parties as executors and trustees thereunder, and that Israel V. Harris qualified as such executor; that Myra Harris, Lucy C. Harris, and I. Victoria Harris, as well as the Stilwell & Bierce Manufacturing Company, Israel V. Harris, and Frank L. Carpenter, have or claim to have rights and interest in these premises as subsequent purchasers or incumbrancers or otherwise.

These two bills were filed on the same day, and such proceedings were had that jurisdiction was had by the court of the person of all the defendants.

The defendants Myra Harris, Lucy C. Harris, and I. Victoria Harris are infants, and appeared by guardian *ad litem* duly appointed.

Frank L. Carpenter also appeared and answered the bill in each cause.

No contention is made by the answers of Frank L. Carpenter of the making and delivering of these mortgages, though their execution is not admitted.

The claim in the answer is, as to the first-mentioned mortgage, that no payment was ever made thereon of any amount, and that, if said note and mortgage were ever valid and subsisting contracts, the same have not been such within 15 years immediately prior to the death of Myron Harris, and within that time have never been considered by the said Myron Harris and Francis Alvord as valid and subsisting contracts, but, on the contrary, the said note and mortgage are stale, dead claims, having no basis in equity, and all right of action thereon is and has long since been barred by the statute of limitations, and that the infant children of Myron Harris, viz., Myra Harris, Lucy C. Harris, and I. Victoria Harris, have the beneficial interest in said lands.

By the answer of Frank L. Carpenter to the second bill it is denied that there is now due upon the second mortgage the sum of $2,983.10, or that any sum whatever is due thereon from the estate of Myron Harris, or that said mortgage is a valid lien upon the premises described therein, and it alleges that, if said mortgage ever had any validity as to said Myron Harris or his estate, all right of action upon the same is barred by the statute of limitations. The answer also sets out the interest of these minor children of Myron Harris in these premises.

Testimony was taken before a circuit court commissioner in these causes, and on the hearing the court found due and unpaid upon the first-mentioned mortgage the sum of

$1,200, and that the same is a valid and subsisting lien upon the premises therein described.

The court also found due and unpaid upon the second mortgage the sum of $2,200, and that it is a valid and subsisting lien upon the premises therein described. Decree was duly made in each cause ordering a sale of the premises for the payment of such sums and costs.

From these decrees the defendant Frank L. Carpenter appeals.

It appears that the defendant Israel V. Harris was called as a witness for the complainant on November 17, 1885, and testified to the genuineness of the note and mortgage first given by Myron Harris. The witness was then shown the second mortgage, dated February 23, 1870, given for $1,456, and testified that the signatures thereto were the genuine signatures of Myron Harris and himself, and that said mortgage was given for the interest on the first mortgage, and that there was never any interest paid on the first mortgage until the second mortgage was given, and that no interest has ever been paid upon either of the mortgages since the second mortgage was given, and that at the time the second mortgage was given there was no cash paid, and no other payments have been made upon these mortgages.

On his cross-examination the witness testified substantially that he and his brother, Myron Harris, were engaged together in the lumbering business in Talmadge for 30 years, and that he had an intimate knowledge of Myron's financial circumstances; that he had no knowledge of Myron's receiving any money on the first mortgage, and at that time Myron was more or less pressed with debts; that this mortgage and note were in his (witness') handwriting, were made at Talmadge, and mailed to Alvord at his home in New York; that Alvord and Myron married sisters. On the date the second mortgage was given—February 23, 1870—an indorsement appears upon the first mortgage of $1,706, made as this

witness says, in the handwriting of Francis Alvord, and that Myron received no money from Alvord at that time, and was hard up, and pressed with debts; that the second mortgage was drawn in Myron's handwriting, at Talmadge; and that it is his recollection that when this second mortgage was given it paid up all the back interest on the first mortgage.

The complainant then gave in evidence the mortgages and note with the above-mentioned indorsement upon the first mortgage.

It appears that the case here rested until July 29, 1886, when Israel V. Harris was again examined before the same commissioner, a stenographer being called in to take the testimony. A stipulation appears in the record by which the solicitors for the respective parties appear to have agreed to the taking of such testimony. Mr. Harris was examined in chief by complainant's solicitor, and cross-examined by the defendant Frank L. Carpenter, who appeared as the solicitor in the two causes for the defendants. On this examination Israel V. Harris appeared very reluctant to answer the questions, and was pressed many times with leading questions. Some complaint is made by defendant's solicitor of this mode of examination, but from an inspection of the record we think under the circumstances this course was justified.

On this examination it appeared from the testimony of Mr. Harris that he and his brother, Myron, were interested together, not only in the lumber business carried on at Talmadge, but also at Grand Haven, at which place Israel V. had the charge and management. It is admitted by Israel that Myron had money invested there in the business, and the inference is very strong from this examination that during these years he and Myron were partners in their lumbering business.

The witness was asked to state whether he had any understanding with Mr. Alvord with reference to taking care of the first mortgage or the interest upon it, and stated that he

could not remember any special understanding with Alvord, but Alvord knew he acted for Myron and himself, and intended to pay as fast as he could, and felt what he did for Myron was all right.

The witness was here shown three letters written by him self to Francis Alvord, which will be referred to again hereafter. The second letter inclosed the second mortgage referred to herein to Mr. Alvord, and the third letter states that he incloses a draft for $250, to apply on interest on the mortgage.

The witness, on his cross-examination, testified that all the recollection he had of this payment was from the letter, and that when he gave his evidence before in the cause he had no recollection of this payment, and that he could not now state which mortgage the $250 was to be applied upon, only his opinion was that it was to be applied upon the mortgage signed by him,—the second mortgage,—but that he could not say that he gave any directions further than as stated in the letter accompanying the draft how or upon which mortgage the money was to be applied.

The following are the letters referred to:

"GRAND HAVEN, Feby. 14, 1870.

"F. ALVORD, ESQ.;
    "Liverpool, N. Y.—

"*Dear Sir:* Yours received some time since, and should have been much sooner answered. If apologies were of any avail I should feel that I ought to make many to you, but I am well aware that what you want, and what you ought to have, is pay, and that is what I have expected to bring about, and this is my only excuse for not having sent you the promised security long since.

"I am running a lumbering job at Stern's Bayou, and have hardly been home since I received your letter. I will attend to the matter the first time I go home. Money matters are very tight here, and but poor show for selling real estate at present, but our R. R. is prospering *all right*, and I think in the spring we shall see a very different show for Grand Haven. I am getting in a nice lot of logs, which I shall get into market early in the season, and am in

hopes to realize something handsome for the timber; and as soon as I can get hold of some money that I dare spare I will promise to pay you at least a part of it, etc.

"Yours truly, I. V. HARRIS."

"GRAND HAVEN, March 1, 1870.
"F. ALVORD, ESQ.,—

"*Dear Sir:* I inclose mortgage on N. E. ¼ sec. 27, T. 7 N., R. 13, which is a part of Myron's sheep farm, and is ample security for the amount named in the mortgage. Myron figured up the old mortgage, and made the amount due to this date at 10 per cent. compound interest, $1,456.

"I hardly know what will be the correct way to fix this so that there would be no question as to how this matter stands to any one, but would suggest that you indorse on the old mortgage or note interest paid to this date by giving a new mortgage to cover interest, and to send us an acknowledgement to that effect.

"Money matters are decidedly tight here, and business dull, but I think the prospect for Grand Haven and vicinity is very flattering. I have got along so far that I think I can see through until the opening of navigation, when those interested in lumber generally believe they will be all right. I have had several *nibbles* by way of purchasing some real estate we have, but have not succeeded in selling but small amounts, but am sanguine that Grand Haven property is going to sell soon. Have got in a nice lot of logs at a low figure, and am in hopes to realize something from them, although I expect lumber to be low.

"All well. I wish to be remembered to Mrs. Alvord and the other friends at L.

"Hoping to hear from you soon, I am,

"Yours truly,      I. V. HARRIS."

"GRAND HAVEN, Feb. 18, 1873.
"F. ALVORD, ESQ.,—

"*Dear Sir:* I inclose draft for $250, to apply on interest due on mortgage. It is the best I can do at this time.

"I have deferred answering yours received some time since, hoping to get hold of some money to pay, instead of making another mortgage. I have several ways by which I expect to get some money for you, but may be disappointed, as money matters are very close here. At the worst I can promise you some soon after the opening of navigation, as I have quite a lot of stuff on hand that will bring money at some price. I have some twenty men and ten teams at work, and am at my

wits' ends as to how I am going to get through to the opening of navigation, unless I can sell some property.

"We are under many obligations for your indulgence, and hope to be able to make restitution, and that soon.

"Please remember me to Mrs. Alvord and the other friends at L.

"Yours truly,      I. V. HARRIS."

It appears that this $250 was included with the amount of the second mortgage of $1,456, and indorsed as a payment upon the old mortgage as $1,706, and of the date of February 23, 1870.

The principal question in the case is whether this second mortgage was given and received in payment and satisfaction of the interest which had accrued on the first mortgage, so as to save that mortgage from the operation of the statute of limitations.

It is claimed by the solicitor for the complainant that I. V. Harris was the agent of Myron Harris, so that the latter will be bound by the acts and admissions of his brother, Israel V. Harris, especially the admissions contained in the foregoing letters.

Upon the death of Israel V. Harris the foreclosure case of the second mortgage was revived as against his heirs, for the reason that he had title of record to the mortgaged premises derived from Myron Harris subsequently to the mortgage in foreclosure.

It is contended by the defendant that the first mortgage was given without consideration, and as a cover by Myron Harris to keep off his creditors.

Defendant also raises another question in his brief, relative to the depositions of Israel V. Harris, which are contained in the record. A motion was made to the court below by defendant to suppress these depositions. Several grounds were set out in the affidavit in support of this motion, the principal one being that the defendant did not have notice of the calling in of Mr. Harris to have the same read

over to him before signing, the deposition having been taken before a stenographer, in short-hand, and then copied from these minutes so taken, and the copy made signed by the witness; also that he did not have notice of the filing of either of the depositions.

A stipulation was also annexed to the last deposition, which defendant denied having agreed to, it being taken down by the stenographer by dictation at the time of taking the deposition, and returned by the commissioner as a part of the proceedings before him, as admissions of counsel.

Many of these statements contained in the affidavit of defendant are met and contradicted by other affidavits, and the whole matter was presented to the court below and passed upon, and the motion denied. It appears that, upon each of the occasions of examination of Mr. Harris, Mr. Carpenter appeared as solicitor, and had full opportunity to cross-examine the witness. This cross-examination is contained in the record.

We are not satisfied that any injustice has been done by the refusal of the court to suppress them. Mr. Harris died after these depositions were taken, and before the cause was brought on for hearing in the court below, and, considering all that is shown by the record here, which we have carefully examined, we think the court very properly overruled the motion, and admitted the depositions in the case.

What were the business relations between Myron Harris and his brother, Israel? Israel Harris, in his testimony, says:

"I cannot say what our relation was except that I sometimes acted for him, and sometimes for myself. It is a legal question which I cannot answer whether we were partners."

It appears that while these two brothers were not ostensibly partners, yet Israel V. Harris sometimes acted for Myron, and did this without special authority upon every occasion, and in each special action, but no objection was

ever made by Myron, so far as the record discloses, when knowledge of such action was brought home to him. They worked and acted together, as this witness describes it. In the fall before the last mortgage was given Alvord visited Myron at Talmadge. Israel saw him, and talked over with him the old mortgage and its unpaid interest, and the giving of another mortgage on other property for that interest; and Israel afterwards saw Myron, and talked over these matters and his interview with Alvord. He says the talk with Alvord the fall previous was about giving a new mortgage for the interest on the first one, and says:

"I must have talked with Myron about the second mortgage before it was given, and I think I talked with him about my talk and understanding with Alvord. I have a distinct recollection that I talked with Myron Harris about the giving of the second mortgage. I cannot tell exactly when or where it was."

The latter mortgage was signed by both brothers, and sent to Alvord with the letter of Israel V. under date of March 1, 1870. The body of this mortgage is in Myron's handwriting, and they were together when it was signed. It was then intrusted to Israel V. Harris to forward, and he, pursuant to the talk had before that, and under the terms of the letter inclosing it, sent it to Alvord, by whom it was received and accepted as payment, and so indorsed on the mortgage in Francis Alvord's own handwriting. Under these circumstances we think this was sufficient evidence of the agency of Israel V. Harris to bind Myron, and that he is bound by the acts and the admissions of his brother, Israel V. Harris, contained in the letters. And it is quite clear that it was the intention of the parties that this mortgage was to operate as a payment upon the first mortgage, and to settle the interest thereon to that date.

Our attention is called by the defendant to the fact that in any manner of computation the amount of interest on the

75 MICH.—12.

old mortgage to that date is not the amount stated in the second mortgage. But Israel explains this in his letter inclosing the mortgage, when he says:

"Myron figured up the old mortgage, and made the amount due to this date at ten per cent. compound interest, $1,456."

The manner of his computing the interest is not stated. It appears, however, that the interest at 10 per cent. compounded would have been a much larger sum. Alvord, however, received it, and made the indorsement as requested in the letter, and Israel says:

"It is my opinion that Mr. Alvord received the second mortgage understanding that it was to clear up the back interest on the first mortgage, and pay that."

The decree made below gives credit upon the first, not only for the face of the new mortgage, but also for the $250 paid in 1873. This $250 in the decree made is also credited upon the second mortgage, so that the question as to which mortgage it should have been credited upon does not arise, except in so far as it might operate to take it out of the statute of limitations.

There was no direction as to where this $250 was to be applied, whether upon the first or second mortgage. It was intended to be applied upon one or the other of them. In the absence of any such directions the mortgagee had the right to apply it to whichever he chose. A debtor owing two or more debts to a creditor, to whom he makes a payment, has a right to direct to which debt it shall be applied, but, in the absence of any such direction, the creditor may apply the payment to whichever debt he pleases. *Pennsylvania Co's Appeal*, 7 Atl. Rep. 70; *Magarity v. Shipman*, 82 Vir. 784 (1 S. E. Rep. 112, note and cases there cited); *Shelden v. Bennett*, 44 Mich. 634 (7 N. W. Rep. 223). The first mortgage was due September 27, 1859, and, unless there was a payment made upon it, all action was barred

upon it before this suit was commenced. How. Stat. § 8709, provides that—

"No suit or proceeding shall be maintained to foreclose a mortgage on real estate, either at law or in equity, unless commenced within fifteen years from and after such mortgage shall become due and payable, or within fifteen years after the last payment was made on said mortgage."

The allegation in the bill is that Myron Harris paid upon said mortgage $1,706 on February 23, 1870. It is shown that he gave a mortgage to Mr. Alvord on that date of $1,456, upon another piece of land, and that on February 18, 1873, his brother, Israel, sent a draft to Alvord of $250, to apply upon one or the other of these mortgages. The second mortgage does not, in terms, refer to the first, but proofs are given showing that it was intended as a payment on the first. Defendant claims that this proof is inadmissible. We think this proof admissible, and, if this second mortgage was intended as payment, its legal effect was to bring the first mortgage out of the operation of the statute of limitations. The statute is not a bar if suit is commenced within 15 years after the last payment was made on the mortgage.

Payment, in its more restricted sense, is the discharge in money of a sum due,—the performance of a pecuniary obligation. To constitute payment, money or some other valuable thing must be delivered for the purpose of extinguishing the debt, and must be received for that purpose. 2 Greenl. Ev. § 516, and note. Payment may be made in any mode which the parties agree shall be treated as the equivalent of a money payment. It may be by means of anything of value which by mutual consent is given and accepted on account of or in satisfaction of the debt.

As stated by Mr. Justice Elliot in *Weir v. Hudnut*, 115 Ind. 525 (18 N. E. Rep. 24):

"What the parties agree shall constitute payment the law will adjudge to be payment. It is competent for parties to

designate by their contract how, and in what, payment may be made. It is by no means true that payment can only be made in money; on the contrary, it may be made in property or in services. In short, whatever the parties agree shall constitute payment will be regarded by the courts as payment, provided the thing agreed upon is of some value."

No peculiar signification is given to the term "payment."

Section 8725, How. Stat., requires the acknowledgment or new promise to be in writing, but section 8729 expressly provides that the act shall not in any way alter the effect of any payment of principal or interest made by any person It is held that no unusual meaning is to be attached to the word "payment," used in that section of the statute.

In *Maber v. Maber*, L. R. 2 Exch. 154, it was held that whatever would satisfy a plea of payment in an action brought directly for the recovery of the debt would be a payment sufficient to bar the statute of limitations. This same doctrine is also laid down in Wood, Lim. § 112, p. 243; *Blanchard v. Blanchard*, 122 Mass. 528; *Goenen v. Schroeder*, 18 Minn. 66.

Here the agreement and arrangement was that the new mortgage should be treated as a payment of the interest to that date on the old mortgage. It was indorsed by the mortgagee as a payment, in accordance with the request of Israel V. Harris, acting in behalf of his brother, and he (Israel) being one of the makers of this new mortgage. This comes plainly within the provisions of the statute, and must be treated as a payment, so that action upon the mortgage would not be barred by this statute.

But, even if this were not so, the payment of the $250 in 1873, and the indorsement of that as a payment upon the old mortgage, under the circumstances, would operate to save the mortgage from the statute of limitations.

Some claim is made here that the evidence tends to show that this first mortgage was given as a cover. We are not satisfied that the evidence tends to show this. The fact that

Israel V. Harris had no actual knowledge that Myron received the money upon it does not establish the fact that it was given without consideration. The mortgage itself imports a consideration paid. A note was given with it, and in the talk between these brothers, and between Israel V. Harris and Alvord, it was treated as a valid and subsisting mortgage. The acts of Israel V. Harris and his letters to Alvord all tend to show that all the parties looked upon the first mortgage as a valid one. The evidence tends to show a valid mortgage, rather than one given as a cover.

We are satisfied from all the circumstances surrounding the case that the court below reached a correct conclusion, and the decree in each case made must stand. These decrees will therefore be affirmed, with costs.

The other Justices concurred.