GUSTAV MANOWSKY, Appellee, *vs.* AUGUST STEPHAN *et al.*
Appellants.

*Opinion filed February 20, 1908—Rehearing denied April 16, 1908.*

1. CONSTITUTIONAL LAW—*what is essential to validity of a law
applicable to special class.* To take a law applicable to a special·
class out of the constitutional prohibition against special legisla-
tion there must be some actual, substantial difference between the
individuals of that class and other persons, when considered with
reference to the purposes of the legislation, such as marks them
as proper objects in whom to vest the specific right granted.

2. SAME—*provision of Mechanic's Lien act allowing attorneys'
fees is special legislation.* The provision of section 17 of the Me-
chanic's Lien act, in so far as it allows a lienholder to recover an
attorney's fee to be taxed as part of the costs, is special legisla-
tion, in violation of section 22 of article 4 of the constitution.
(*Vogel* v. *Pekoc,* 157 Ill. 339, distinguished.)

3. MECHANICS' LIENS—*when question whether contractor had
a builder's license is immaterial.* In a mechanic's lien proceeding,
if no question is raised by the pleadings as to whether or not the
contractor was licensed by the city as a builder, that question is im-
material in the trial of the case.

4. SAME—*when alleged error as to finding of law is harmless.*
Alleged error by the court in approving the master's finding of law,
in a mechanic's lien case, that the owner, after notifying the con-
tractor that the building did not comply with the contract in certain
specified respects, was estopped to set up any other claims, after
the suit was begun, unless based upon latent defects, is harmless,
where it is not shown that any claim was allowed for patent de-
fects which were not covered by the notice.

5. MASTERS IN CHANCERY—*what should be contained in master's
report.* The master's report of his conclusions should contain only
a statement of the ultimate facts, by reference to the pleadings or
otherwise; his conclusions upon the questions of law, without dis-
cussion or argument, and his computation of the amount due, and
should not contain extracts from the testimony, quotations from
authorities or his reasons in support of his conclusions.

6. SAME—*master is not required to prepare an opinion in the
case.* In reporting his conclusions the master in chancery is not
required to prepare an opinion in the case or to state his reasons
for his conclusions; and if he decides to overrule the objections to
his report he should merely state his decision, without discussion
or argument.

7. SAME—*construction of statute relating to a master's fees in counties of third class.* Hearing argument, preparing a report and passing on objections are matters covered by the language, "examining questions in issue referred to them and reporting conclusions thereon," found in section 20 of the Fees and Salaries act, relating to fees of masters in chancery in counties of the third class.

APPEAL from the Superior Court of Cook county; the Hon. FARLIN Q. BALL, Judge, presiding.

This is a bill filed by Gustav Manowsky, the appellee, in the superior court of Cook county, against August Stephan and Henrietta Stephan, appellants, and others, to enforce a mechanic's lien for $300 against certain property owned by appellants, based on a contract between the appellee and appellants for the erection of a building on said premises. Appellants answered the bill, denying that the appellee had completed his contract and was entitled to the relief sought. A replication was filed and the cause referred to a master in chancery to take the proofs and report his conclusions. Objections to the master's report were overruled by the master and ordered by the court to stand as exceptions, and upon a hearing before the chancellor a decree was entered confirming the report and finding that appellee had substantially complied with his contract and was entitled to $266 in full payment of the balance claimed by him, a solicitor's fee of $75 and costs of suit, in accordance with the recommendations of the master. The decree directed payment of these sums and in default thereof a sale of the property. From that decree appellants have prosecuted this appeal.

During the early part of the month of September, 1905, appellee entered into an agreement with appellants to erect for them a two-story brick building, thirty-eight feet in length and twenty-two feet wide, on a lot owned by them in the city of Chicago. Appellee was to furnish the material. The contract price was $2700, and $2400 had been paid on account thereof before this suit was brought. Some time during the month of November, 1905, appellee claimed

the building was practically completed, and the appellants moved into the house. In January, 1906, the parties met at the office of Otto H. Buettler, an attorney at law, who prepared a statement for appellee, addressed to appellants, at their request, purporting to show the moneys due and unpaid to material dealers, sub-contractors, etc., for work done on the building. This statement made by the appellee showed, among other things, that $20 worth of work would be required to finish the building. The attorney testified that this amount was agreed upon between appellee and appellants. On May 6, 1906, appellee and his men came to the house to do this work. They replaced some of the kitchen flooring which had warped out of shape, re-hung some of the doors that had swollen so that they would not shut, and also re-varnished some of the woodwork of the lower flat. At this time Mrs. Stephan told appellee that she was not satisfied with the house and would not accept it in the condition in which it then was. Appellee refused to do anything further with the building and brought this suit. The master and the chancellor charged him with amounts aggregating $34 on account of defects in materials and workmanship, and held that he was entitled to a decree for the remainder of the unpaid portion of the contract price.

Various assignments of error are urged, which will sufficiently appear from the opinion.

OSSIAN CAMERON, and PHILIP KOEHLER, for appellants.

WEST, ECKHART & TAYLOR, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

In this case the superior court by its decree adjudged that the property owners should pay to the lienholder the sum of $75 as solicitor's fees, in accordance with a provision made by the last sentence of section 17 of the Mechanic's Lien law, being paragraph 31 of chapter 82, Hurd's Revised Statutes of 1905. That section reads as follows: "The

cost of proceedings as between all parties to the suit, shall be taxed equitably against the losing parties, and where taxed against more than one party, shall be so taxed against all in favor of the proper party but equitably as between themselves; and the costs, as between creditors aforesaid in contests relative to each other's claims, shall be subject to the order of the court, and the same rule shall prevail in respect to costs growing out of the proceedings against and between encumbrances. In all cases where liens are enforced, the court shall, in its discretion, order a reasonable attorney's fee taxed as a part of the costs in favor of the lien creditor."

Appellants contend that this statute is unconstitutional in so far as it authorizes the recovery of attorney's fees by a lienholder, and argue that it violates certain sections of our bill of rights and violates the fourteenth amendment to the Federal constitution. We have reached the conclusion that the sentence in question is in violation of the State constitution, but for reasons other than those urged by appellants. It is special legislation. It confers a right upon persons entitled to liens by virtue of the Mechanic's Lien law and confers that right upon no others. No reason exists for singling out those holding mechanics' liens and granting unto them this right, while denying it to other lienholders, such as landlords, agistors and carriers. Legislation is not special merely because it applies only to the members of a particular class, but to make such a law valid there must be some actual, substantial difference between the individuals of that class and other persons in the State or community, when considered with reference to the purposes of the legislation. The class must be composed of individuals possessing in common some disability, attribute or qualification, or in some condition marking them as proper objects in whom to vest the specific right granted unto them. (*Harding* v. *People,* 160 Ill. 459; *Gillespie* v. *People,* 188 id. 176; *Horwich* v. *Laboratory Co.* 205 id. 497;

*Jones* v. *Chicago, Rock Island and Pacific Railway Co.* 231 id. 302.) We regard the last sentence of the section of the statute above set out as in conflict with section 22 of article 4 of the constitution of the State.

The appellee, anticipating, no doubt, that the question whether this enactment is special legislation would occur to us, endeavors to meet that proposition by the citation of the case of *Vogel* v. *Pekoc,* 157 Ill. 339, where it was held that the statute of 1889, which gave the right to recover attorney's fees in suits for wages to every "mechanic, artisan, miner, laborer or servant or employee" who should have cause to bring suit for wages after demand in writing, was constitutional and was not special legislation. That statute applies only to wage earners. The amount claimed by them in most instances will not, in the nature of things, be large, and often so small that the persistent refusal of the employer to pay would, in effect, result in the denial of the employee's right to recover, for the reason that the sum that the latter would necessarily be obliged to pay for attorney's fees would be greater in amount than the sum due from the employer. Persons to whom the benefit of that statute was extended are persons composing a class who are in a condition making it proper to afford to them the remedy granted by that statute, and the statute applies to all wage earners without discrimination, while this statute, as we have above suggested, singles out lienholders, such as the appellee, from all other lienholders without just reason.

Upon the taking of testimony before the master some controversy arose as to whether or not appellee had been licensed by the city of Chicago as a builder, and appellants contend that the evidence offered for the purpose of showing that the appellee had been so licensed was not competent. The bill herein does not aver that he was a licensed builder and the answer does not state that he was not a licensed builder. As no question in reference to this matter

was raised by the pleadings it was immaterial in this suit whether he possessed the license in question.

After appellee had finished the last work done by him on the building appellants served a written notice on him, stating that the building did not comply with the contract in five particulars, specifying each. When the suit was pending before the master and after the evidence was heard, the master found, as a matter of law, that the appellants were estopped to set up claims, after the suit was begun, which were not mentioned in the notice, except claims for defects which were latent in their character,—that is, such as could not be perceived by appellants when the notice was given. It is urged that the court erred in approving this finding. It is not made to appear by the brief and argument of appellants that there were patent defects which were not covered by the notice. Under these circumstances this finding of law was harmless, whether it was correct or not.

Whether there was a substantial compliance by appellee with the terms of the contract and whether or not appellants were indebted to him in the amount found due by the master depends upon conclusions to be drawn from conflicting evidence. Upon consideration of all the proof we are not disposed to hold that the court erred in overruling the exceptions to the master's report upon these questions. The bill filed claimed $300 due appellee. The answer, as originally filed, denied that there was $300 due and unpaid, but stated "that there is due to the complainant a sum less than $250." Later, as the heat of the controversy increased, appellants, upon leave of court, amended their answer by striking out the quoted language. It is apparent, however, that at the time of the institution of the suit the difference between the parties was not great.

Objection is made to the amount decreed the master for his services. There was allowed him for taking 825 folios of testimony, at fifteen cents per folio, the sum of $123.75. So far as this item is concerned it is said to be exorbitant,

but no basis for that statement appears. By the decree it is stated that for other services performed by the master "the court finds the sum of $76.25 is a reasonable fee." The decree does not show what the other services were for which this allowance was made. The master, by a statement attached to his report, shows that he devoted more than one entire day to listening to arguments in the case, and on February 11, 1906, by that statement he makes the following charge: "Engaged two hours, abstracts, evidences, searching for authorities and preparing report." On the next day he charges for four hours devoted to the same service; on the next day for the entire day; on the next day for two and one-half hours; on the next day for two hours. On March 18, 1907, after hearing the argument upon objections, he charges for two hours' service in re-examining the evidence and the building ordinances of the city of Chicago. March 19 he charges for one hour in dictating the report on the objections. It is apparent upon an examination of the master's report and of the order or "report" made by him in overruling the objections, that far more time was devoted to preparation of the original report and the order or "report" disposing of the objections than was necessary. The report of his conclusions occupies twenty-four pages in the printed abstract. It is made up of lengthy extracts from the testimony, quotations from authorities and statements of reasons in support of his conclusions. It was only necessary for him (1) to state the ultimate facts, by reference to the pleadings or otherwise; (2) to state his conclusions upon questions of law in issue without discussion or argument; and (3) to make computation of the amount due from appellants to appellee. His report was many times greater in length than it should have been. The law required from him statements of conclusions, a computation, and nothing more. If either party desired to know his reasons, and he desired to give them, he could do so orally. They were not properly a part of

his report. The law does not contemplate the preparation by him of an opinion in the case. Upon consideration of the objections to his report he prepared what he calls a report on objections, which occupies eight and one-half pages of the printed abstract and is of the same general character as the original report of his conclusions. From it is gathered the fact that he overruled all the objections. The only thing that was necessary for him to do in passing upon objections, after hearing argument and reaching his decision, was to make a statement, in writing, to the effect that all the objections were overruled, which could have been done in less than a dozen words.

Section 20 of chapter 53, Hurd's Revised Statutes of 1905, provides, among other things, as follows: "In counties of the third class, masters in chancery may receive for examining questions in issue referred to them, and reporting conclusions thereon, such compensation as the court may deem just, and for services not enumerated above in this section, and which have been and may be imposed by statute or special order, they may receive such fee as the court may allow." Hearing argument and preparing a report and passing on objections thereto is covered by the following language from the statute, to-wit: "Examining questions in issue referred to them and reporting conclusions thereon," and for such services rendered in this case we think $50 was ample compensation.

The decree of the superior court will be reversed and the cause will be remanded to that court, with directions to enter a decree establishing a lien against the property involved in favor of the appellee, for the sum of $266, with provisions for the enforcement thereof. That decree will allow nothing to appellee for solicitor's fees and will fix the master's fees at $123.75 for taking and reporting the testimony and $50 for examining questions in issue and reporting his conclusions thereon, which shall be in full of his compensation.   *Reversed and remanded, with directions.*