## GRACE HARBOR LUMBER CO. *v.* ORTMAN.

1. MECHANIC'S LIENS — PAYMENT — APPLICATION OF AMOUNT RECEIVED — ELECTION.

A payment made by the general contractor to one having a lien, or right to claim a lien, for materials or labor which entered into the construction of a building, may be applied by the recipient as he may elect and if treated as in satisfaction of an amount due for other matters disconnected from the building no objection could be raised by the owner unless the contractor had in some manner stipulated as to the manner in which he wanted it applied.

2. SAME—SOLICITOR'S FEES—EXPENSE OF SUIT.

Since the statute permits the court to award solicitor's fees in its discretion (3 Comp. Laws 1915, §§ 14807, 14816), $50 to each claimant could not be held to be excessive in amount for a hearing which lasted about eight days.

3. CONSTITUTIONAL LAW—CLASS LEGISLATION—MECHANIC'S LIENS.

The statutory provisions authorizing the award of solicitor's fees to the successful parties in proceedings for the enforcement of mechanic's liens were not invalid and the objection that it was class legislation could not be sustained.[1]

4. MECHANIC'S LIENS—CLAIM, AMOUNT OF—GOOD FAITH—EQUITY —PARTIES.

Complainant, in a mechanic's lien proceeding, claimed that the contractor owed it a balance of $1,486.14, which the court reduced, by allowing an agreed discount, to $1,363.19. Other claimants filed claims in excess of the total which was due and they were reduced ten per cent. or upwards by the court. Among the parties to the proceeding was included the surety company which had guaranteed the contractor's performance. The bond provided that if the principal should pay or cause to be paid any sum for which the obligee might obtain judgment the obligation should be void. *Held*, that the aforesaid claims filed were not so excessive in amount as to indicate bad faith. *Held*, also, all rights could be considered and adjusted in the one cause and the bonding company was properly made a party.

Appeal from Wayne; Murphy, J. Submitted January 13, 1916. (Docket No. 129.) Decided March 30, 1916.

Bill by Grace Harbor Lumber Company, a corporation, against Ferdinand C. Ortman and others to enforce a mechanic's lien. From a decree for complainant, defendants appeal. Modified and affirmed.

[1]As to constitutionality of statute giving attorney's fee in suit to enforce mechanic's lien, see note to 20 L. R. A. 565. Also as to effect of filing excessive mechanic's lien, see note to 29 L. R. A. (N. S.) 305.

*Wilkinson, Routier & Hinkley,* for complainant and cross-complainant Bartlett Supply Company.

*E. S. Clarkson,* for defendant Ortman.

*James H. Pound,* for defendant Smilansky.

The bill in this case is filed for the purpose of enforcing a mechanic's lien.   Prior to the filing of the bill, the owner, Louis Smilansky, had released the liens of the complainant and the cross-complainants, the Bartlett Supply Company and Ferdinand C. Ortman, by filing a bond with the county clerk upon which bond William Friedman, Henry M. Weil, and Max Smilansky became sureties.   Upon filing the bill the complainant made the three individuals who had signed the surety bond parties defendant, which course was followed by the cross-complainants.   The principal defendant, Louis Smilansky, in his answer set out the following:

"There remained in the hands of this defendant the sum of $800, which this defendant has now on hand and which, if required by the decree of this court, after a hearing, he stands ready to disburse and pay as directed by such decree."

The answer contains the following further averments:

"This defendant says, however, that the said dwelling houses, by reason of the default of the said Latham, under his said contract for the erection of the same, as aforesaid, were delayed in the completion, and were not erected, constructed, and completed in accordance with the contract and the plans and specifications forming a part thereof, and that in consequence thereof this defendant was put to great trouble, annoyance, and expense, and the said dwelling houses, by reason of said delay and of inferior material and workmanship, became and were of less value than they otherwise would have been, and the same were afterwards sold at a price very much less than they could have

been sold for if the same had been erected and constructed in accordance with said contract. Whereby, and by reason thereof, this defendant suffered a loss, and was deprived of profits, rents, and advantage, to the amount of $4,000 and upwards, which he might and could have recouped under the law against said Latham. But this defendant waived said claim, in order that all who, according to the best information he could get, had furnished material or labor entering into the construction, might be paid at an early date, and so this defendant paid said Latham accordingly."

A very extended hearing was had in the court below, and the court, after the testimony was all in, visited the premises and made an examination thereof. We insert certain excerpts from the opinion of the learned circuit judge.

"I want to hear your argument on certain phases of the matter, and I want to decide it while the testimony is fresh in my mind. I want to make a view of the premises at 2 o'clock, accompanied by counsel, and you might take up the argument now. There are certain phases of the matter that I do not care to hear any argument about, and I think I will state one phase of it now, into the record.

"I find as a matter of fact that there was no agreement entered into between Mr. Latham and Mr. Smilansky by which Mr. Latham was to be charged with the interior decorating and the other items involved. I accept Mr. Latham's testimony upon that proposition as establishing the facts, it is borne out by the whole circumstances of the situation, it is most improbable, in my view, looking at the whole situation, under the testimony of Mr. Smilansky and Mr. Latham on that proposition, that any such agreement was made, and to my mind no such agreement was made. That will simplify the argument in some respects. We can take up half an hour now, with the argument. I will hear first from the Grace Harbor Lumber Company, what you claim as to their claim.    *    *    *

"I think I should now state one other conclusion of fact at which I have arrived, so that counsel may be advised of it, in their presentation of their claim. In

my view I am satisfied from the testimony that Mr. Smilansky was fully apprised of the situation in which Mr. Latham found himself. The testimony shows that Mr. Smilansky was the dominating force in the construction of these buildings, and that the general contractor, Latham, was very much under his control and influence, and accepted his leadership, and I might also say his dictation, and it seems most improbable that Mr. Smilansky, in view of his situation in the premises, would have proceeded, without full knowledge of Latham's situation. Latham says that he advised Mr. Smilansky fully of his (the former's) situation, that he (Latham) gave his books to, and laid all these matters in detail before, Smilansky. I believe that is true. I believe that was the fact, and that Smilansky was very fully advised by Latham of the state of his (Latham's) accounts with his materialmen and with his subcontractor, Klump. * * *

"The defendant Louis Smilansky may, for the purposes of this suit, be regarded as the owner of the premises involved herein. This litigation grows out of the construction by him, or under his direction, of three apartment buildings upon the land described in the bill of complaint. The complainant, the Grace Harbor Lumber Company, furnished material, which went into those buildings, as did the cross-complainant Ferdinand C. Ortman and the Bartlett Supply Company. The general contractor for the erection of the building was the defendant Chas. C. Latham. The defendant and cross-complainant Wm. K. Klump was a subcontractor, having taken from Latham the contract to do the necessary mason work. These three buildings were to cost, according to the contract price, the sum of $13,200. The defendant Smilansky has paid out, according to the terms of his answer, the sum of $12,400, and admits having on hand the sum of $800, which he is willing to apply as the court may direct. Under the testimony given by him, however, he claims to have paid out on this job the sum of $12,778.35.

"A statutory bond has been given by him in lieu of any lien that may be decreed, by which he obligates himself to pay over any moneys found to be due under the final decree to be entered.

190 Mich.—28.

"Liens are sought to be enforced by the complainant, the Grace Harbor Lumber Company, and by the Bartlett Supply Company, and by F. C. Ortman.   *   *   *

"Let us pass now to a consideration of the facts which are necessarily to be considered, in order to arrive at a correct determination of the issues to be presented by the lien claimants above referred to. What I said this morning before the argument commenced, and what was said during the course of the argument, does not need to be repeated, but should be kept in mind in passing upon this aspect of the case. Being satisfied, as I am, that no such agreement was entered into with Mr. Latham as Mr. Smilansky claims, by which Latham was to assume the cost of the interior decorating of buildings and certain other items of expense, it follows that the moneys so expended and charged by Smilansky against Latham's account upon the cost of the buildings are improperly so charged. What are these items? I will detail them. They include the T. B. Rayl item of $3.39; the Robertson item of $10.29; the Randolph item of $24.50; the A. & W. Cooper item of $57.20; the Hughes item of $80; the Bennett item for interior decorating of $474.50; paper returned of $1.40 paid in cash by Mr. Smilansky; the Bailey item of $4.60 for cleaning windows, which was not a charge which could properly be made against the general contractor; the item of $51.90 being concededly the additional cost for pressed brick at $3 per thousand; the item of $120 for 12 mirrors at $10 each; the fence at the cost of $55; the item of $300 for moneys which he had charged against work done but not finished upon the property situated on the corner of Willis avenue and Brush street in this city, that being begun by Latham for Smilansky, but abandoned; speaking tubes to the value of $18—these items aggregating the sum of $1,200.78. As to the Hughes item of $80, I am satisfied from the testimony that Mr. Hughes made a contract with Mr. Smilansky for the alterations of the porches. The A. & W. Cooper item, $57.20, is for brick for the porches, made necessary by their reconstruction at Mr. Smilansky's instigation.

"This may be an appropriate time to deal with the reasons for reconstructing these front porches. I think

the plans clearly show that the grade line upon them bears no necessary relation to the sidewalk. The tracing and blueprints give a grade line which might be at any elevation above the sidewalk. The facts are that the grade line was fixed by Mr. Smilansky in conformity with the building immediately to the north, and with some reference also, I believe, to the buildings immediately opposite and upon the west side of Brush street. I find no reason for charging the general contractor, Latham, with any improper workmanship in the construction of these front porches. The grade line was fixed by Mr. Smilansky, and the plans followed by Mr. Latham, due regard being had to the fact, which is clearly shown by the testimony, that the ground upon which these buildings was constructed was not level, but was on a slight incline towards the south.

"As was said earlier today, I find that Mr. Smilansky had actual notice of the state of Latham's account with his materialmen, his subcontractor Klump, and with his laborers. Mr. Klump testifies that a day or two prior to April 10th he fully apprised Mr. Smilansky of the state of his (Klump's) bill, and Mr. Smilansky does not deny this. I believe the fact is that he (Mr. Smilansky) was fully advised of the situation in which Klump then was. It is very significant that the statutory sworn statements in evidence here were all prepared in Mr. Smilansky's office, by his stenographer or some one in his employ. All the circumstances satisfy me very convincingly that he had full, actual notice of the real situation which obtained between Latham and Klump and their respective materialmen and employees. It is insisted by Mr. Smilansky that no payments were made by him until receipt was had of statutory sworn statements. It is claimed by him and denied by cross-complainant Ortman that a sworn statement was received prior to the payments made on April 10, 1912. Mr. Smilansky explains the absence of this statement by saying that there has been a dissolution of the partnership of which he was then a member, and that he has subsequently removed his office, and that this statement has become lost. I am satisfied that he received sworn statements before making payments which were made. But were these

sworn statements of such a character as to have the benefit of the statute accrue? I do not think so., I believe that, in giving the note of $400, upon April 10th, Mr. Smilansky was fully advised of the indebtedness then owing from Klump to the Bartlett Supply Company for materials which went into this job, just as he was aware, on June 22, 1912, what the real situation was when he received the sworn statement of that day. I say that one must act in good faith in the reception of the statutory sworn statements, if one is to be protected by them, and I do not believe that either of these two statements were received in good faith. In my view it follows that the cross-complainant Ortman is therefore entitled to a decree in his favor in the sum of $154.49.

"Coming now to the claim of the Bartlett Supply Company, it appears that $250 of the note for $400, given upon April 10th, was credited by that company upon other accounts which Klump had with it. It is the option of a debtor, in making the payment, to direct what application shall be made of moneys which he pays. Where no direction is given, the option accrues to the creditor to make such application as he wills. No direction was given by Mr. Klump to the Bartlett Supply Company, for the application of the $250 which he (Klump) received out of the $400 face value of the note upon this (the Smilansky) job, and in fact it was otherwise applied by the Bartlett Company. That company was within its rights in making that application. The claim of the Bartlett Supply Company aggregates $394.62. Under the testimony given by Mr. Klump, this claim should be reduced by the sum of $35.26, leaving a balance of $359.36, for which, in my judgment, the Bartlett Supply Company is entitled to a decree.

"Passing now to the claim of the Grace Harbor Lumber Company, it is contended by Mr. Smilansky that there was such collusion upon its part with the general contractor, Latham, as should preclude it, in any event, from any decree in its favor. I do not think this claim established. Its claim is for $1,486.18. $25 should be deducted from this claim for material delivered upon the premises in question, but used elsewhere, leaving a balance of $1,461.18, for which the

Grace Harbor Lumber Company is entitled to a decree.

"When I have said the lien claimants, the Grace Harbor Lumber Company, F. C. Ortman, and the Bartlett Supply Company, are entitled to decrees in the amount mentioned, I have said so without any computation of the amounts which will be due from Mr. Smilansky when the sums involved have all been canvassed. The actual amount, as heretofore stated, which he paid out upon these buildings, was $12,778.35. From this should be deducted the sum of $1,200.78 above detailed. This leaves a balance actually paid out by him upon these buildings of $11,577.57. Deducting this last sum from the contract price of $13,-200, a balance remains of $1,622.43. This, I take it, is the amount available to be prorated between these three lien claimants."

A decree was entered against defendant upon the footings of the opinion. The last two paragraphs of the decree follow:

"It is further ordered, adjudged, and decreed that complainant do recover his costs in this cause to be taxed, together with a solicitor's fee of $50, and that said cross-complainant Bartlett Supply Company do recover its costs in this cause to be taxed, together with a solicitor fee of $50, and that cross-complainant Ferdinand C. Ortman do recover his costs in this cause to be taxed, together with a solicitor's fee of $50, and that the same may be made a personal claim against the said defendant Louis Smilansky, and that they have execution therefor; that defendant Friedman, having raised the question that the sureties on the bond are not a proper party, and the court agreeing with said Friedman, the other sureties not raising the point, it is ordered that the bill of complaint be and the same is hereby dismissed as against William Friedman without costs to either party."

All of the parties appeal; complainant and cross-complainants because a decree was not entered against the bondsmen as well as against the owner; the principal defendant and owner because: (1) The amount found by the circuit court to be due is excessive. (2)

That the claim of the defendant and cross-complainant Bartlett Supply Company was allowed at an excessive sum. (3) That clause of the decree allowing $50 solicitor's fee to the complainant and to each of the cross-complainants was erroneous. (4) A further claim is made on behalf of the defendant owner that the variance between the amount of the lien filed and the amount actually due, in the case of the complainant and the cross-complainant the Bartlett Supply Company, is sufficient to defeat those liens.

BROOKE, J. (*after stating the facts*). We will first consider defendants' claims.

1. The conflicting claims of the parties were presented in great detail in the court below, and the conclusions of the trial judge were reached only after a most careful and painstaking investigation with the aid of able counsel. In view of the state of the pleadings and in the light of the testimony, which we have examined with care, we are of opinion that in the statement of the account between the parties there is not only testimony to support the findings of the learned trial judge, but that they are established by a preponderance of the evidence. As to some matters there was a sharp conflict of testimony, and it is obvious, from that portion of the opinion of the trial court quoted in the statement of fact, that many of the claims of the defendant owner were disregarded; the evidence in support thereof not having convinced the mind of the trial judge of their righteousness. In cases of this nature, we have frequently said that much weight should be attached to the opinion of the trial judge, who had the advantage of seeing the witnesses upon the stand and hearing their testimony. We have no difficulty in reaching a conclusion upon this point that the decree is sustained by the testimony.

2. The contention of the defendant under this point

arises out of the following state of facts:   Defendant Smilansky gave to Latham, his principal contractor, a note on account for $400.   Latham, the principal contractor, went to the office of the Bartlett Supply Company, where the note in question was turned over by Klump to the Bartlett Supply Company without instructions as to how it should be credited.   The Bartlett Supply Company, instead of crediting it to Klump on account of material furnished upon the Smilansky job, credited $250 upon accounts Klump owed them upon other jobs.   It is not claimed by defendant Smilansky, or by the contractor Latham, or by Klump the mason contractor, that any instructions were given as to how the money represented by the note was to be credited.   While in this case there would seem to be an apparent hardship growing out of the application of the rule that a debtor may elect as to which of two or more debts his payment shall apply, but if he does not so elect the creditor may elect (*Blair* v. *Carpenter*, 75 Mich. 167 [42 N. W. 790]; *Van Sceiver* v. *King*, 176 Mich. 605 [142 N. W. 1069]), the result is due to the failure of the defendant Smilansky to see, as he might have done, that the payments made by him to his principal contractor were properly applied.

3. The statute covering the allowance of solicitors' fees is as follows (section 10721, 3 Comp. Laws; 3 Comp. Laws 1915, § 14807):

"The court shall examine all claims that shall be presented, and shall ascertain and determine the amount due to each creditor who has a lien of the kind before mentioned upon the estate in question, and every such claim that is due absolutely and without any conditions, although not then payable, shall be allowed, with a rebate of interest to the time when it would become payable.   The court may, in its discretion, allow a reasonable attorney's fee when judgment shall be rendered in such proceeding, in favor of the parties succeeding therein."

See, also, section 10730, 3 Comp. Laws (3 Comp. Laws 1915, § 14816).

In the case of *Wisniewski* v. *Nawrocki*, 153 Mich. 523 (116 N. W. 1065), it was held in a mechanic's lien case, under the section quoted, that the complainant was entitled not only to a reasonable solicitor's fee, but to actual disbursements.

Considering the time consumed in the trial of the cause (some eight days), it cannot be said that the allowance of $50 each to the complainant and cross-complainants is excessive, or amounts to an abuse of discretion on the part of the trial court. Nor do we understand that this is the claim made on behalf of the defendant. As to that, counsel for defendant says:

"I insist that this claimed legislation is class legislation of the most pronounced class, and that it is also in violation of Amendment 14 of the Constitution of the United States, which holds that all citizens must be treated with equality."

It must, we think, be said (and apparently it is so conceded by counsel for defendant) that the statute which permits the court in its discretion to allow reasonable counsel fees "in favor of the parties succeeding therein," if constitutional, is a sufficient warrant for the action of the court.

Counsel for defendant cites the case of *Toms* v. *Williams*, 41 Mich. 552 (2 N. W. 814), as authority for his proposition that the statute is unconstitutional. The only matter determined in that case pertinent to the question under consideration is that in Michigan there is no authority for charging an estate with the expenses, beyond taxable costs, of an appeal in equity by heirs at law from the construction of a will.

The case of *Wilder* v. *Railway Co.*, 70 Mich. 382 (38 N. W. 289), is likewise cited. It was there determined that Act No. 234, Pub. Acts 1885, allowing the plaintiff in a suit against a railroad company to tax as a

part of his costs an attorney fee of $25, was unconstitutional. The court held the legislation in question in that suit to be class legislation, and the imposition of a penalty upon the defendant, because in case the railroad company was successful in defending it could collect from the plaintiff only the statutory fee of $10; whereas, if it were defeated it would be compelled to pay an additional penalty of $25. No such defect is apparent in the legislation under consideration. The court's discretion in the fixing of solicitor's fees may, under this statute, be invoked for the successful parties whether complainants or defendants.

The case of *Davidson* v. *Jennings*, 27 Colo. 187 (60 Pac. 354, 48 L. R. A. 340, 83 Am. St. Rep. 49), is upon principle similar to *Wilder* v. *Railroad Co., supra*. The statute there under consideration provided:

"In all suits for the foreclosure of liens provided for in this act in which the plaintiff shall obtain a judgment and decree of foreclosure against the property described in said lien, there shall be taxed as costs in addition to the costs already provided for in such cases, a reasonable sum as attorney fee to be fixed by the court at the time of rendering such judgment and decree."

The Colorado court held this act unconstitutional because it denied to the defendant, if successful, a reciprocal right.

In the case of *Atkinson* v. *Woodmansee*, 68 Kan. 71 (74 Pac. 640, 64 L. R. A. 325), the court had under consideration a statutory provision for the allowance of attorney fees under a mechanic's lien act. The provision, like that in Colorado, was in favor of the plaintiff only, and it was held bad as being a denial of the equal protection of the laws, and therefore unconstitutional.

The statute considered in *Openshaw* v. *Halfin*, 24 Utah, 426 (68 Pac. 138, 91 Am. St. Rep. 796), was subject to the same infirmity as those just considered.

It provided for the payment of a reasonable attorney's fee to the plaintiff only. The court cited many cases in support of its decision, and quoted from *Coal Co.* v. *Rosser,* 53 Ohio St. 12 (41 N. E. 263, 53 Am. St. Rep. 622), as follows:

"Upon what principle can a rule of law rest which permits one party, or class of people, to invoke the action of our tribunals of justice at will, while the other party, or another class of citizens, does so at the peril of being mulct in an attorney fee, if an honest but unsuccessful defense should be imposed? A statute that imposes this restriction upon one citizen, or class of citizens, only, denies to him or them the equal protection of the law."

The cases of *Manowsky* v. *Stephan,* 233 Ill. 409 (84 N. E. 365), and *Durkee* v. *City of Janesville,* 28 Wis. 464 (9 Am. Rep. 500), are similar in character to those just considered, and determination in each is based upon an application of the same principle.

In no case cited by counsel for the defendant did the court have under consideration a statute permitting the allowance of discretionary attorneys' fees to the successful party whether complainant or defendant.

Complainant cites *Stimson Mill Co.* v. *Riley,* 42 Pac. 1072; *Sweeney* v. *Meyer,* 124 Cal. 512 (57 Pac. 479) ; *Armijo* v. *Electric Co.,* 11 N. M. 235 (67 Pac. 726)—in none of which was the constitutionality of the statute questioned or considered. A further line of cases cited in the supplemental brief are pertinent to the question under consideration. *Peckham* v. *Fox,* 1 Cal. App. 307 (82 Pac. 91) ; *Dell* v. *Marvin,* 41 Fla. 221 (26 South. 188, 45 L. R. A. 201, 79 Am. St. Rep. 171) ; *Robertson* v. *Moore,* 10 Idaho, 115 (77 Pac. 218) ; *Duckwall* v. *Jones,* 156 Ind. 682 (58 N. E. 1055, 60 N. E. 797) ; and *Title Guarantee Co.* v. *Wrenn,* 35 Or. 62 (56 Pac. 271, 76 Am. St. Rep. 454).

We are of opinion that the statute is constitutional,

and that the discretion exercised by the learned trial judge thereunder was fair.

4. The variance between the amount claimed by the several liens and the amount allowed by the court was slight. Complainant's lien was filed for $1,486.14. The amount awarded by the court was $1,363.19. The difference between the amount claimed and the amount allowed was due largely to the fact that a certain discount had been agreed upon between the complainant and the principal contractor, and this agreement for discount had been disregarded at the time the lien was filed. The Bartlett Supply Company lien was filed for $369.63, and allowed at $339.45. Some small portion of the material for which the lien was claimed was delivered upon the defendant owner's job, but was shown to have been used upon another job. The variance between the amounts actually due and those for which the lien was claimed are small in each instance, and the record contains no evidence of bad faith. Under such circumstances, the variance should be disregarded. *Perkins* v. *The Golden Girl*, 185 Mich. 200 (151 N. W. 660), and cases there cited.

The statutory bond filed by defendant Smilansky to secure a release of the liens contains the following condition:

"Now, therefore, the condition of the obligation is such that if the above-bounden principal shall pay or cause to be paid to the above-named obligee, any sum for which the said obligee may obtain judgment or decree upon the demand for which statement of account was filed, either against the said principals or against the foregoing described property, then this obligation to be void, otherwise to remain in full force and virtue."

The exact question here presented has never been considered in this court, although the case of *C. H. Little Co.* v. *L. P. Hagen Co.*, 185 Mich. 316 (152 N. W. 95), is very closely in point. We there said:

"In the instant case we have before us the owner, the original contractor, the subcontractors, the materialmen, and the bonding company which gave a bond, not only to the owner, but 'to all persons who may become entitled to liens under the contract.' Is there any valid legal or equitable reason why the respective rights of the parties should not be settled in one proceeding? We think the answer should be in the negative."

The rule is well settled in the State of New York that the remedy to enforce the obligations of the sureties to such a bond is not by an action at law upon the bond, but by an action in equity in which all persons interested, including the sureties on the bond, are made parties, and it is not a condition precedent to the bringing of the action that the lienor shall exhaust his remedy against the landowner by recovering a judgment of foreclosure in form against the property described in the notice of lien. It is there held that the complaint should be in the usual form, and, instead of asking judgment of sale of the premises, it should demand relief against the persons executing the bond. *Morton* v. *Tucker*, 145 N. Y. 244 (40 N. E. 3). See, also, 27 Cyc. p. 283, and cases cited.

We can see no reason why litigation should be multiplied by compelling complainant to have recourse to an action at law upon the bond in order to realize the amount of the lien established by the decree in equity. A decree making the bondsmen liable, as well as the principal, is the most direct method of collection, and denies to the sureties upon the bond no substantial right. As parties defendant they may appear and protect themselves from the establishment of any unjust claim.

The decree should be amended fixing the liability of the sureties as well as the principal upon the bond. Otherwise it will stand affirmed.

STONE, C. J., and KUHN, BIRD, MOORE, STEERE, and PERSON, JJ., concurred. OSTRANDER, J., did not sit.