Porter & Trask, Appellees, v. Western Tube Company, Appellant.

Gen. No. 4,998.

This case is controlled by the decision in Granquist v. Western Tube Company, *ante* p. 230.

Mechanic's lien. Appeal from the Circuit Court of Henry county; the Hon. EMERY C. GRAVES, Judge, presiding. Heard in this court at the April term, 1908. Affirmed in part, reversed in part. Opinion filed October 14, 1908.

KNAPP, HAYNIE & CAMPBELL, CHARLES K. LADD and MARK BREEDEN, JR., for appellant.

POMEROY & DEMERATH, for appellees.

MR. JUSTICE WILLIS delivered the opinion of the court.

This is an appeal from the Circuit Court of Henry county to review a decree of that court allowing appellees, James Porter and Harry W. Trask, subcontractors, a mechanic's lien on property owned by appellant, the Western Tube Company.

On June 20, 1906, appellees filed in said court a bill against the Western Tube Company and Frederick H. Mathews and Charles F. McMullen, co-partners, doing business as the Mathews Construction Company, to establish and foreclose a subcontractors' mechanic's lien for lumber and building materials furnished on a building erected on lots one and two, of block thirteen, of the original town, now city of Kewanee. The bill alleged that on or about June 28, 1905, appellant entered into a written contract with the Mathews Construction Company to erect an office building on its premises according to certain plans and specifications, a copy of which contract was attached to the bill. The contract provided that the building was to be constructed according to said plans and specifications and finished by Decem-

ber 1, 1905, and in the event of failure to complete the building by that date, unless delayed by certain causes therein enumerated, a forfeiture of $5 per day was stipulated for. The contract price for the construction of said building was $16,400. The bill further alleged that on June 29, 1905, appellee entered into a verbal subcontract with the Mathews Construction Company to furnish the lumber and mill work necessary for the execution of said contract for the sum of $3350 and to furnish such extra material as was needed, the price therefor not to exceed the fair market value of the same, to be delivered and payment made therefor, within three years from the furnishing of the first of such material, and that in accordance with the terms of said subcontract they delivered upon appellant's premises between July 3, 1905, and March 9, 1906, the material so contracted for, and also delivered between June 29, 1905, and February 21, 1906, extra material to the amount of $621.17; and that said office building in the construction of which such material was used, was constructed on lot one and a part of lot two in block thirteen, in the original town, now city of Kewanee, of which appellant was the owner, and that there was due and unpaid on said contract, $1717.73, and that on April 16, 1906, the Mathews Construction Company rendered to appellant a verified statement in writing of the names of all parties furnishing labor or materials and of the amounts due or to become due each, which was delivered to appellant within sixty days after the final delivery of the materials by appellees. Appellant answered the bill and admitted the contract between it and the Mathews Construction Company, substantially as set up in the bill, but denied that the Construction Company ever completed said building and alleged that it was not completed according to the contract, and that said contract had not been performed by the Construction Company, and admitted that it owned the premises, and disclaimed knowledge as to the contract between appellees and the Construction Company

and its indebtedness to appellees, and denied that legal notice was served on it, stating the amounts due and owing to the said Construction Company, and the names of the persons furnishing labor or material for the construction of said building, and stated that it had no knowledge that appellees furnished material, and that it was not advised and could not state whether appellees furnished material and labor in the construction of the buildings, and denied that it was indebted to appellees or that they were entitled to a lien. Appellees filed a general replication to appellant's answer, and the bill was taken as confessed as to Mathews and McMullen. The cause was referred to the master to take proof and report the evidence and his conclusions of law and fact. The master heard the proof and reported that appellees were entitled to a lien on lots one and two of block thirteen of the original town, now city of Kewanee, on account of materials furnished in the erection of the building thereon.

To this report, appellant filed a number of objections, one of which was that it appeared from the evidence that no part of the building was on lot one, but that it was on lots two and three. This objection was held to be good and the master amended his report and found that the lien should be allowed on lot two and overruled appellant's other objections. There was a hearing before the court upon the master's report and the exceptions thereto. The court approved his finding, and entered a decree granting appellees a lien for $1717.73 on lot two and $171.77 to appellees' counsel as attorney's fees. From this decree the Western Tube Company appealed.

Appellant first contends that the decree is erroneous, because it found that a lien should be allowed on lot two whereas the bill alleged that the building was erected on lots one and two, on the ground that appellees were bound by the allegation in the bill, that to entitle them to recover they must prove the whole allegation, and that appellees failed in this because the

evidence did not show that the building was erected on lots one and two but did show that it was erected on lot two, on the alley between lots two and three, and on a part of lot three.

Counsel for appellant contends that a subcontractor can have a lien the same as the original contractor under section one of the Mechanic's Lien Act of 1903, which provides that a lien may be had upon the whole of such lot or tract of land and upon the adjoining or adjacent lots or tracts of land of such owner, constituting the same premises, and occupied or used in connection with such lot or tract of land as a place of residence or business; and in case the contract relates to two or more buildings, or two or more lots or tracts of land, upon all of such lots and tracts of land and improvements thereon, for the amount due with the interest thereon, and that that means a lien must be taken upon all the premises occupied by the building or none.

We cannot agree with counsel on this proposition. In Sorg v. Pfalzgraf, 113 Ill. App. 569, a suit to enforce a mechanic's lien, the bill located the house on lots nine and ten. On the trial it developed that it stood on lots eight and nine and not on lot ten. It was then too late to enforce a lien against lot eight. The court ordered a decree against lot nine only. We there said, the owner cannot be permitted to defeat the lien upon his land which the law has given the builder simply because the builder might have obtained a lien upon more of the owner's land.

It does not appear that Granquist's rights were prejudiced by the decree in this case, unless, as urged by appellant, Granquist should share *pro rata* with the other subcontractors in the amount shown to be due by the statement made by the Construction Company on April 16, 1906. Section five of the Mechanic's Lien Law of 1903, makes it the duty of the owner to require of the contractor, before he, or anyone for him, shall pay or cause to be paid to said contractor, or for him, any moneys or other consideration due, or to become

due such contractor, or make or cause to be made any advancement of any moneys or other consideration, a statement in writing, under oath, or verified by affidavit, of the names of all parties furnishing material and labor and the amounts due or to become due each. The proof shows that appellant was to pay the Construction Company $16,400 for the construction of the building, and that before obtaining the statement required by section five, appellant paid the original contractor, $13,000. As against subcontractors and material men these payments were unlawful. Nutriment Company v. George Green Lumber Co., 94 Ill. App. 342. For that reason Granquist cannot be required to share *pro rata* in the amount remaining after such unlawful payments.

The bill did not state that Granquist was interested in the premises, but the evidence disclosed that he had a claim as a subcontractor. From this, appellant argues that appellees did not meet the requirements of section 11 in that Granquist was not made a party. If he was a necessary party, appellant had adequate notice of such fact and should have raised the question of non-joinder of parties in the court below. Or, if, as appellant now contends, Granquist's suit for a lien was then pending, it could have moved the court below that the causes be consolidated. The objection was first raised on the final hearing. When thus delayed such an objection does not receive favor from the court, and in such cases to be of avail it must appear that the decree will have the effect of depriving the appellant of its legal rights. Pease v. Chicago Crayon Co., 235 Ill. 391.

Appellant contends that since the contract required the building to be completed December 1, 1905, final payment should have been made at that time, and a suit to enforce a lien should have been brought within four months thereafter; that the material furnished after December 1, 1905, was not furnished under the original contract, but under some other, and that the time of payment for such material is not shown. The proof

shows that appellant did not declare a forfeiture of
the contract, as it might have done, for failure to com-
plete the work by December 1, 1905, but let the work go
on and adjusted the penalty with the contractor April
12, 1906; that the final payment was to be made upon
the completion of the building, and that it was com-
pleted and accepted April 16, 1906, and that the final
delivery of material under the estimate was made
March 23, 1906, and the final delivery of extra material
March 9, 1906. This suit was commenced June 20, 1906,
within the four months period required by section 33.

Respecting the extras claimed by appellee, the evi-
dence of the architect shows that the claim for extras
was made by the original contractors and adjusted with
appellant. Appellant should have considered in that
adjustment that appellees were furnishing part of the
extras, and should have kept enough out of the settle-
ment to indemnify it if compelled to pay subcontractors,
if lien was sought for the extra work, but appellant did
not do this, consequently it cannot now complain.

The court adjudged that the property owners should
pay the lien holder's attorney the sum of $171.77 as fees,
in accordance with a provision made by the last sentence
of section seventeen of the Mechanic's Lien Act (par.
31), which provides: "In all cases where liens are en-
forced, the court shall, in its discretion order reasonable
attorneys' fees taxed as a part of the costs in favor of
the lien creditor." Since the rendition of judgment in
this case in the court below, the Supreme Court in Man-
owsky v. Stephan, 233 Ill. 409, said, referring to this
sentence, "We have reached the conclusion that the
sentence in question is in violation of the state consti-
tution  *  *  *. It is special legislation. It confers
a right upon persons entitled to liens by virtue of the
Mechanic's Lien Law, and confers that right upon no
others  *  *  *. We regard the last sentence of the
section of the statute above set out as in conflict with
section 22 of article 4 of the constitution of the
state." The decree directed the attorney's fees to

be paid direct to Pomeroy & Demerath, attorneys for appellee. If an allowance for attorney's fees had been proper, the decree should have directed it ·to be paid to the party to the suit who had incurred the liability for solicitor's fees. It follows that the allowance for solicitor's fees, designated as attorney's fees in the decree, must be reversed.. No other harmful error appearing in the record, the decree in all other respects is affirmed, one half of the costs of this court to be paid by appellee.

*Affirmed in part, reversed in part.*