## Lilla M. Breed, Executrix of the Will of Otis S. Lyman, deceased, et al. v. George K. Baird.

### Gen. No. 13,433.

1.   CHANCERY PRACTICE—*where "unknown owners" are made parties.*   Where "unknown owners" are made parties defendant, and they are non-resident or their addresses are unknown, two affidavits are *imperatively* required—the first affidavit for the purpose of procuring issue of process, and the second affidavit to authorize the clerk of the court to cause notice by publication to such defendants to be made, as directed by other statutory provisions.   Substantial compliance with these provisions of the statutes is essential to clothe the court with jurisdiction to proceed to adjudicate the rights of such persons and cannot be dispensed with.

2.   DECREEE—*when recitals do not aid defects in service.*   Recitals in a decree of due service do not aid defects of service appearing from the manner of service specifically shown by the record—the attack being direct, not collateral.

3.   DECREE—*how far binding upon party.*   A decree will bind a party with respect to all his interests, personal or representative, regardless of the manner in which he was named or served as a party.

4.   FORECLOSURE—*who necessary parties to.*   All persons interested in the subject-matter of the trust deed as note owners or claiming title or interest in the land conveyed, are not only necessary but are indispensable parties to a foreclosure proceeding, and

they will not be bound by the decree, or cut off from the right of redemption, if such they possess, unless brought within the jurisdiction of the court, so that the decree may operate upon and determine any rights which they may possess.

5. FORECLOSURE—*who not necessary parties to.* Beneficiaries who have no rights or claims separate or distinct from those which are represented by a trustee, and who have no independent rights of redemption, are neither necessary nor proper parties to a foreclosure proceeding in which such trustee is a party.

6. FORECLOSURE—*duty of trustee as party to.* It is the duty of the trustee named in a trust deed sought to be foreclosed to see to it that every reasonable and available means are exerted to protect the rights of the note owners in accordance with the conditions of the instrument under which he acts.

7. USURY—*when note representing compounded interest, not tainted with.* Where there are no countervailing equities or conduct smacking of fraud, a note which represents a voluntary settlement, arrived at through a computation of interest upon the compound method, will not be held tainted with usury.

8. VARIANCE—*rule with respect to, in chancery.* In chancery, as well as at law, the proofs and allegations must correspond, and a material variance between the averments of the bill and the essential findings of the decree will result in reversal.

Foreclosure. Error to the Superior Court of Cook County; the Hon. AXEL CHYTRAUS, Judge, presiding. Heard in this court at the March term, 1907. Reversed and remanded. Opinion filed October 28, 1907.

**Statement of Facts.** This writ of error is sued out to reverse a decree foreclosing a trust deed in the nature of a mortgage conveying real estate in Cook county to secure an indebtedness aggregating $30,000, evidenced by twenty notes for $1,500 each, dated December 5, 1893, made by Otis S. Lyman, payable to his own order three years after date, with interest at 6 per cent per annum, payable semi-annually, and with interest at the annual rate of 7 per cent after maturity. The notes were indorsed in blank and delivered to sundry persons, among others, five to defendant in error, George K. Baird, and five to the plaintiff in error, Oliver E. Chapman. The notes are numbered consecutively from 1 to 20, those held by George K. Baird being numbered 5, 7, 9, 11

and 20, and those held by Oliver E. Chapman 6, 8, 10, 12 and 14.

Otis S. Lyman and Prentice C. Baird were born and reared in the same part of New England and were lifelong friends. Baird continued to reside in the place of his birth until his death, but Lyman came west and at the time of his death and of the transactions out of which the matters in which his estate is here involved, resided at LaGrange, Cook county, Illinois. These parties had many mutual transactions, and on February 1, 1878, Otis E. Lyman owed Prentice C. Baird the sum of $3,873.07. They had a settlement on that date, and Lyman and his wife, Lizzie E. Lyman, made and delivered the following note to Baird in settlement, viz.:

"$3,873.07.                    Chicago, Feby. 1st, 1878.

One day after date we promise to pay to the order of P. C. Baird three thousand eight hundred seventy-three and 07/100 dollars, for value received, with interest at the rate of 8 per cent per annum.

Otis S. Lyman,<br>Lizzie E. Lyman."

Subsequent to the date of this note, and on January 1, 1881, Otis S. Lyman was discharged as a bankrupt in the District Court of the United States for the Second District of Alabama, and the foregoing note scheduled as a liability. With the foregoing note Lyman made a conveyance of some real estate in LaGrange and assigned a policy upon his life in the Connecticut Mutual Life Insurance Co. for the sum of $2,500 to Baird, both as collateral security. On January 10, 1884, Lyman made a payment of $500, which was indorsed upon the note. Thereafter, and on October 6, 1890, Prentice C. Baird died testate. C. C. Benton and defendant in error were the executors of his will. Baird in his lifetime had made no effort to collect the note, but after his death defendant in error pressed for payment and placed the note in the hands of an attorney at Chicago named Wilson Ames for adjustment. Lyman agreed with Ames upon a settlement and in furtherance thereof he and his wife

gave a note dated August 1, 1891, payable to the order of George K. Baird, etc., for $7,731.73, one day after date, with interest at "six per cent." This amount was arrived at by calculating interest upon the principal sum at six per cent and compounding it annually. Ames wrote to Lyman before the making and delivery of this note, "I have figured the interest at six per cent compound to Aug. 1, '91, and make it $7,731.73. Let me know if you make it the same." This amount was $477.56 more than the amount due, calculating interest at 8 per cent, called for by the terms of the note. In other words, this excess resulted from the agreement to compound at 6 per cent. An agreement indorsed upon the back of the note provided that upon its payment the La-Grange property conveyed to P. C. Baird when the original note was given was to be reconveyed by quit-claim deed.

On November 15, 1892, the note for $7,731.73 was surrendered and a new note given of that date by and to the same parties for $8,330.90, and on December 5, 1893, this latter note was surrendered and in its place a new note executed by Lyman and his wife for $8,860.33 was delivered to George K. Baird, payable to his order July 5, 1895, with interest at six per cent per annum. With this note there were delivered four notes of $1,500 each, secured by the trust deed foreclosed, and thereafter on October 24, 1895, a fifth note of the same series.

The consideration of the two last recited notes was the note for $7,731.73 first given to defendant in error in settlement of the note of February 1, 1878, for $3,873.07. The interest was compounded but once, and then in the manner described.

After the making of the trust deed securing the 20 notes of $1,500 each, Lyman and his wife conveyed the mortgaged property to the plaintiffs in error, Henry N. Cooper and Albert C. MacLauchlan, trustees of the Shawmut Avenue Land Association. Cooper and MacLauchlan paid to Baird in principal and interest upon the five notes of $1,500 each held by him as collateral to the note of the Lymans for $8,860.33 the sum of $1,949.01. The death of Otis S. Ly-

man was suggested December 12, 1901, and Lilla M. Breed substituted as executrix. Upon the indebtedness to Baird there is also a further credit of $861.54, being the net proceeds received by Baird from the $2,500 life policy after deducting premiums with interest thereon advanced by Baird to keep the policy in existence.

The owners of all the notes, other than those owned by Baird, were made defendants under the designation of "unknown owners and holders of the several promissory notes described in said trust deed as numbers 3, 4, 6, 8, 10, 12, 13, 14, 15, 16, 17, 18 and 19." An affidavit of non-residence of the defendants, "unknown owners," etc., was made by George W. Stanford, solicitor for Baird, and publication against said unknown owners made, and a certificate of such publication filed. This was the only affidavit filed. Under this notice the plaintiff in error Chapman came in and answered the bill.

The decree finds the amount due Baird upon the five notes held by him secured by the trust deed set out in the bill to be $8,921.10, the master having found the amount due at that time on the note for $8,330.90 to be $10,824.62. By the amended decree the court finds that plaintiff in error Chapman is the owner of five of the notes secured by the trust deed in question, numbered 6, 8, 10, 12 and 14, and that there is a total of principal and interest due him of $12,081.25. The decree further finds that by the terms of the trust deed all of the notes are payable in the order in which they are numbered. The decree, as amended, orders that in default of payment within one day of the amounts due Baird and Chapman, that the mortgaged premises be sold, etc., and out of the amount realized from such sale there be paid to Baird and Chapman the several amounts due on their respective notes in the order of their respective numbers.

Objections were filed by plaintiffs in error to the master's report, and upon being overruled were by leave of court refiled as exceptions. (R. p. 214.) The latter order failed to appear of record because the clerk failed to transcribe

the order in the record. This omission was supplied by a sufficient *nunc pro tunc* order entered May 24, 1907, as found in the record.

The trust deed provided for partial payments with releases of *aliquot* parts of the mortgaged premises, the amounts so received from partial payments to be applied to the extinguishment of the indebtedness created by the notes in their numerical order. The trust deed also contained the following, among other provisions: That in case of default in payment of any of the 20 notes, or any part thereof, or interest thereon, or in case of waste, non-payment of taxes, or other breaches, "then in such case, the whole of said principal sum and interest secured by the said twenty promissory notes shall thereupon, at the option of the legal holder or holders thereof, become immediately due and payable." After providing for the entry of the trustee upon the mortgaged premises on the occurrence of any of the defaults enumerated, the collection by him of rents, etc., and the right to file a bill for foreclosure and to obtain a decree for a sale and conveyance of the mortgaged premises, directs that the proceeds of the sale shall be applied, first, to the payment of costs, including solicitor's fees and other expenses, etc., "then to pay the principal of said notes, whether due and payable by the terms thereof or the option of the legal holder thereof."

Plaintiffs in error, Lilla M. Breed, executrix, etc., Henry N. Cooper and Albert C. MacLauchlan, assign and argue as reversible error: First, that the unknown owners of certain notes set out in the bill have not been brought into court in the manner provided by statute; second, that the trustees of the Shawmut Avenue Land Association were not made parties, neither was the association brought into court by service of process; and third, that the note of the Lymans for $7,731.73, of date August 1, 1891, is tainted with usury, and that Baird consequently, if entitled to any decree at all, is limited in his recovery to the principal sum of the note of February 1, 1878, viz.: $3,873.07; and plaintiffs in error, David B. Lyman, trustee, Chicago Title and Trust Company, and Oliver E. Chapman assign and urge

in argument as error: First, that the statute requires two affidavits to be filed to make "unknown owners" parties defendant, and that the filing of but one failed to give the court jurisdiction of such "unknown owners," and that consequently the decree is void; and second, variance between the averments of the bill and the findings of the decree.

LYMAN, LYMAN & O'CONNOR and W. R. BURLEIGH, for plaintiffs in error.

CHAUNCEY W. MARTYN and WILLARD D. NORTON, for defendant in error.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

We will dispose of the points involved in the order in which we have named them; but before proceeding so to do will set at rest a point of practice raised and urged by defendant in error in argument.

It is contended that no exception to the master's report is found in the record, and no order that the objections filed before the master stand as exceptions before the court. That in this condition of the record, under our holding in Beck v. Stoddard, 118 Ill. App., 370, we have no jurisdiction to review the errors assigned. Did the record sustain this averment, the point would be well made. But while the facts as herein above recited show that by omission of the clerk to spread the court's order that the objections stand as exceptions, the original record lacked this necessary order, yet the record was corrected by the court below and duly certified to this court seven days after the counsel filed their brief raising the question. The order of May 24, 1907, destroys the force of the objection made and makes our further consideration of it unnecessary.

First. It is not seriously disputed but that under the provisions of sections 7 and 12 of the Chancery Act, R. S., that where "unknown owners" are made parties defendant, and they are non-resident, or whose addresses are unknown,

two affidavits are imperatively required—the first affidavit for the purpose of procuring issue of process, and the second affidavit to authorize the clerk of the court to cause notice by publication to such defendants to be made as directed by other statutory provisions. Substantial compliance with these provisions of the statute is in our opinion essential to clothe the court with jurisdiction to proceed to adjudicate the rights of such persons, and cannot be dispensed with. Werner v. Thornton, 98 Ill., 156, is a case so akin to this in reasoning and by construction of a similar statute, that it must control. The court said: "The statute contemplates there shall be two affidavits filed, one under section 41, to authorize the proceeding against persons by the name and description of unknown persons, and another under section 8, to justify publication of notice to defendants in a suit." Hartung v. Hartung, 8 Ill. App., 156. But defendant in error, most strenuously, and with some plausibility, insists that while agreeing with the authority of Werner v. Thornton, *supra,* it has no application because by the recitations of the decree the court finds (R. p. 71) that the unknown owners and holders of the notes in the affidavit filed set forth "to have been duly notified of the pendency of this cause by publication of notice pursuant to the statute in such case made and provided," and that such recitation and finding in the decree is conclusive evidence of the fact stated, and cannot be impeached or reviewed from anything appearing in the record *dehors* such finding. Many cases are cited to sustain such contention. A painstaking examination of these cases discloses that where the holding of the court was in the line of counsel's present contention, following the statement in Tompkins v. Wiltberger, 56 Ill., 385, that "it is again urged that there is not sufficient service by publication against the other defendants to sustain the decree. A careful examination of the record fails to show that there was filed in the court below an affidavit of non-residence of these defendants. But the clerk in the notice states that an affidavit was filed, and the court finds that publication was duly made as required by the statute. This is sufficient

under the former decisions of this court," were cases where the attack made upon the verities of the decree impugned was not a direct attack as here, but collateral. The line of distinction between direct and collateral attack has not in many cases been made clear, and there are in some of the opinions statements which tend to confusion if not carefully analyzed with the particular facts in each case well in mind. The case of Matthews v. Hoff, 113 Ill., 90, cited by defendant in error, is fairly illustrative of its misleading effect unless it is borne in mind in analyzing its reasoning and judging of its force, that the attack made against the findings of the decree was not direct in the cause under review, but collateral as being an attack upon the findings of a decree in another and different cause. In this case it is said, "All reasonable presumptions are in favor of the jurisdiction of the court, and the law will presume *prima facie,* at least, from the finding of the court, that such was the fact, that such summons, with the proper return on it, was before the court, and may have been abstracted or lost from the files." If the attack had been direct, in the cause on review, any lost summons could have been supplied by order of the court below on proper application. The doctrine of presumptions, so far as they can be indulged, as to facts recited in a decree or judgment of a court of general jurisdiction, is environed with the limitation that it will only prevail where there is nothing in the record to rebut, impeach or contradict it.

The ruling of Law v. Grommes, 158 Ill., 492, to the effect that a presumption that there was another and a different summons from that appearing in the record, does not arise, on appeal, where the record shows only an illegal or insufficient service, although "due service" was recited in the judgment. So here the recitation, unsupported by the record, that due publication was had to the "unknown owners," etc., fails of imparting any fact to the record contrary to the fact found in the record, that one affidavit only was filed, where two were required by the statute. These statutory affidavits are the basis of jurisdiction, and lacking both

of them, jurisdiction of such defendants is not obtained. Law v. Grommes, *supra,* is a very instructive case of sound reasoning, and clearly defines the distinctions between direct and collateral attack. It was there said: "If the attempt here were to attack the judgment below collaterally, the proposition would have force. We think, however, with the Appellate Court, that even then, under the facts of the case, it could not prevail. But upon what principle it can be availed of in this direct proceeding, we are at a loss to perceive." The court then proceed to recite that the record is certified as complete, that the rule of that court requires the process to appear in that record, from which they find evidence of the fact of defective service, and then a recitation in the judgment of the court of "due service," an erroneous legal conclusion, as in the case at bar, from uncontroverted facts found in the record. When asked in that case to presume regularity of service, in the face of the record to the contrary, and to accept the erroneous finding of the *nisi prius* court as overcoming the record facts, the court said: "The statement of this proposition is sufficient to refute it. In our decisions on the question as to when and how far presumptions in support of recitals of service of process in judgments and decrees will be indulged, the distinction between direct and collateral proceedings has not always been strictly observed. We think, however, the true rule applicable to appeals and writs of error is that whenever it affirmatively appears from the record brought up that the service is illegal or insufficient, and nothing appears to the contrary, the error is not cured by a mere recital of 'due service' on the presumption that there was another and different summons and return from that appearing in the record." Neither can we indulge in any presumption, from the recitals in the decree, something which the record affirmatively shows did not exist. It is further said that if the point here discussed is well taken, none of the defendants interested are here complaining. It is sufficient to say that the regularity of this proceeding affects the title to real estate, and all interested in the title thereto have such an interest, which

vests them with the right to object to and challenge any irregularity which in any measure imperils their security.

All persons interested in the subject-matter of the trust deed as note owners or claiming title or interest in the land conveyed, are not only necessary but indispensable parties to a foreclosure proceeding, and they will not be bound by the decree, or cut off from the right of redemption, if such they possess, unless brought within the jurisdiction of the court so that the decree may operate upon and determine any rights which they may possess. McBurney v. Carson, 99 U. S., 567; Conwell v. Watkins, 71 Ill., 488.

The evidence in this record shows that this rule of law has not been complied with; not only that the unknown owners of notes secured by the trust deed have not been brought within the jurisdiction of the court, but that the rights of all other interested parties, save Baird and Chapman, have been ignored.

Second.    Subsequent to the giving of the trust deed here attempted to be foreclosed the Lymans conveyed their equity in the land to the plaintiffs in error Cooper and MacLauchlan, "Trustees of the Shawmut Avenue Land Association." No attempt was made to bring the "Land Association" or its officers or stockholders, if any it had, into court; but Cooper and MacLauchlan, the grantees in that conveyance, were made parties, appeared, filed their answers, were heard as to their rights, and are now here in an effort to have this court reverse the decree of the chancellor.    Cooper and MacLauchlan cannot be allowed to complain because they have not been brought into court in some other capacity than as individuals.    Harris v. Lester, 80 Ill., 307.    In legal intent they are in court for all purposes, whether as individuals or trustees, and a decree will bind and conclude them and the interests which they may happen to represent.    It might be sufficient to rest on the fact that they have made no disclosures, either by answer or proof, indicating that others are so interested in the *res* involved in this litigation that the decree will not operate to conclude them.    The title to the equity was in Cooper and MacLauchlan.    They were

the parties entitled to redeem from either a sale made under the trust deed, or by paying the indebtedness secured, freeing the land from the lien created by the trust deed, subject to which they took whatever title the Lyman deed conveyed to them. They are parties for all purposes as individuals or in a representative capacity. Their *cestui que trustant* have no rights or claims severed from them. They have no right of redemption as beneficiaries. Whatever right they may have to redeem would result from the right to do so in the name and for and in behalf of the trustees on their failure to make redemption. The benefit flowing from such act would be such as would accrue to them as beneficiaries of the trust vested in Cooper and MacLauchlan, whatever it might be. Neither the trustees as such, nor the Land Association, were necessary or proper parties.

The rule announced in Jones on Mtgs., vol. 2, section 1399, is reasonable and controlling here, viz.: "It has been held * * * that as the trustee and *cestui que trust* really represent but one interest, and the trustee is the holder of the legal interest, he alone should be made a party to the suit, as he would be the party entitled to redeem. This is especially the case where the trust is for the benefit of creditors." Willis v. Henderson, 5 Ill., 13. And Jones *supra* again writes, section 1059: "A trustee who holds the legal estate, or some interest in it, is the proper party to redeem; though the person beneficially interested may redeem upon refusal of the trustee to do so." Rose v. Walk, 149 Ill., 60; Walker v. Warner, 179 Ill., 16.

Third. The taint of usury charged as resting in the method of fixing the amount of the note for $7,731.73, given by the Lymans to Baird, of the date of August 1, 1891, is involved in the third assignment of error argued with some collateral features as to the effect of Lyman's discharge as a bankrupt prior to giving the latter note for the amount due on the note of Lyman for $3,873.07, from the payment of which the bankruptcy proceedings had relieved him.

The discharge in bankruptcy of Otis S. Lyman operated to relieve him from the burden of his debts, and thereby to

Breed v. Baird.

give him the untrammeled opportunity to retrieve his financial fortune. It made him again an active factor in the world of business. However, he was not thereby relieved from the moral obligation resting upon him to pay his debts. So to do, in his own way, in such time as he could, of which he must be the sole judge, was the measure of his moral responsibility, which the discharge in bankruptcy had in no way curtailed. This moral obligation he might discharge at a convenient season. The record indisputably shows that this he did by an agreement satisfactory alike to himself and his debtor and evidenced it by the note in evidence of $7,731.73, which was subsequently merged in the note of $8,860.33, as collateral to which the five $1,500 notes secured by the trust deed here in dispute were given, together with other security. Whether or not this revival and settlement of the old debt is in any way repugnant to the law of the land is the pertinent inquiry. If it is contrary to the law, the settlement must fail; if in accord with it, the agreement of the parties must be upheld and allowed the force and effect which the law gives to contracts of such a character.

The payee in the note for $3,873.07 and Baird were close, warm, personal friends, founded in their boyhood in their New England birthplace. This friendship and mutual confidence continued as staunch and uninterrupted as the rugged mountains of their early New England home. They had many mutual business transactions, extending over many years. They seem to have all rested in mutual confidence and trust. While Lyman seems to have been the debtor of Baird at the time of the latter's death, such indebtedness resting in the note of $3,873.07, yet, notwithstanding the legal obligation to pay had been discharged and nothing but the moral obligation remained, Baird never pressed Lyman for payment. After Baird's death his personal representatives, for the first time, pressed for a settlement, and it was made—made voluntarily, freely and understandingly. The settlement was made by figuring interest upon the $3,873.07 note, with annual rests, adding the annual interest thus determined to the principal and again computing inter-

est and again adding to the principal until the amount of
$7,731.73 was obtained August 1, 1891—a method known
in law and commerce as compounding interest. This, it is
claimed, is denominated in law as usury and illegal. The
interest, it will be observed, was compounded but once—
that simple interest only was added to the subsequent notes
given in extension and renewal of the debt. The original
note provided for interest at the rate of eight per cent per
annum, without specifying any time for its payment. The
interest was compounded at the rate of six per cent per an-
num. The interest in the original note under these condi-
tions became due and payable with the principal, so that at
the time the note for $7,731.73 was given the principal and
interest of the note for $3,873.07, dated February 1, 1878,
payable one day after date, was due and payable. At the
date of the latter note eight per cent interest was allowed by
law, and on August 1, 1891, the date of the interest com-
pounded renewing note, the maximum annual rate of interest
allowed by law was seven per cent. It is conceded that the
method adopted of compounding the interest produced
$477.54 more than calculating simple interest at the rate of
eight per cent.

While it is undoubtedly true that the law does not look
with favor upon such method of compounding interest, and
at times such method has been condemned and avoided by
courts of equity, yet in a fair case, where there are no coun-
tervailing equities or conduct smacking of fraud, it has been
recognized and upheld as not usurious in law. True it is
that there is neither moral nor legal obligation to pay interest
by the compound method, and courts will neither enforce nor
permit its exaction against protest, still the law of the free
right of contract is so broad in its practical effect and oper-
ation that a voluntary agreement to pay interest upon inter-
est is not only sanctioned by the law, but will be enforced by
the courts. In Gilmore v. Bissell, 124 Ill., 488, the court
say: "The mortgagors had agreed to pay the interest on the
mortgage debt annually, and it was their duty to observe that
agreement, but they had failed to pay as the interest each

Breed v. Baird.

year became due. When the time, however, came to renew the debt, the mortgagors had the right, if they saw proper, to redeem their agreement and pay interest on the interest; and their agreement to pay that interest was not illegal, nor did it render the transaction usurious. What was done was but the performance of a contract made by the parties, which they had a right to do."

Here Lyman's note was payable one day after date. He was free to contract to pay compound interest upon the settlement of that indebtedness in the way he did. The extreme length to which a court of equity will go in denying an enforcement of compound interest is along the lines stated in Higgins v. Lansing, 154 Ill., 301, that where a contract challenges, by reason of the method of its making, strict examination, the watchful care of a court of equity will set it aside if for any reason it appears to be inequitable. Peddicord v. Connard, 85 Ill., 102, is well illustrative of this point. There the rests for compounding were arbitrarily made every 60 days—a grossly inequitable and oppressive exaction. It was in its ultimate analysis usury of the most flagrant character; for that reason it was both condemned and denied.

The case of Bowman v. Neely, 151 Ill., 37, is leading and controlling on the question under discussion. It is there said: "Appellant contends that this provision in the note" —for compound interest—"rendered the contract usurious, and that it was error to allow appellee any interest whatever, that the judgment should only have been for the principal of the note less the amount of the several endorsements endorsed thereon. In our opinion the case at bar does not come within the purview of section 6, chapter 74, of the Revised Statutes, 1874. The decisions of this court bearing on this question may be divided into two general classes: First: Where a greater rate of interest is sought to be recovered than is allowed by law. This is usury. * * * And, Second: Where interest upon interest, or compound interest, is sought to be recovered in the case, if no more than the legal rate of interest is charged there is no usury within

the meaning of our statute.  From motives of public policy, however, the law will not allow the recovery of compound interest.  There are but two exceptions to this latter rule. First, in respect to interest bearing coupons attached to bonds or other securities for the payment of money.  *   *   * The second is in cases where, the interest *having become due,* and remaining unpaid, the debtor *then agrees* to have the accrued interest added to the principal and become interest bearing."

The case at bar clearly falls within the second exception to the general rule announced in the case last cited.  The interest on the Lyman note was due at the time of compounding, and the debtor agreed fully and understandingly, as evidenced by the Ames letter to him, to have the accrued interest added to the principal and to become interest bearing.  It consequently follows that the calculations made by the master and embodied in the decree of the amount due upon the note, for which the five notes for $1,500 each, secured by the trust deed in question, were given as collateral security, was correct.  The agreement of the parties must prevail.  This conclusion certainly violates no interest or contract in virtue of which plaintiffs in error, Cooper and MacLauchlan, hold title to the mortgaged property.  They took with actual notice of the lien of the trust deed.  They in fact and in law took title subject and subordinate to that lien for the payment of the notes secured by it.  It does no violence to credulity to assume that the amount of the trust deed lien entered into the calculation of the parties in arriving at the amount paid for such title to the land as Lyman owned.  There is no equitable principle justifying the court in relieving them of their contract obligation to pay the price agreed, or no lawful reason why the note owners should not receive either the amount due them from those claiming the subordinate title, or enforce through a court of equity a sale of the land for that purpose.  They recognized the lien by paying installments upon the indebtedness to Baird.

Fourth.  The first assignment of error made by plaintiffs in error, David B. Lyman, trustee, Chicago Title & Trust

Company and Oliver E. Chapman, is disposed of and embraced in that part of our opinion in which we discuss the first assignment of error made by their co-plaintiffs in error, to which we will but add that while the error there indicated is fatal to the integrity of the decree, and which error, if none others existed, would impel a reversal of the decree of the court below, yet we are not prepared, because in the present condition of the case it is not necessary, to hold that the decree is void. Time lends no curative aid to a void decree or judgment, but has many healing virtues to such as are voidable only.

Fifth. There is a material and incurable variance between the averments of the bill and the essential findings of the decree. The bill sets up the fact that the trust deed was given to secure 20 notes for $1,500 each, numbered from 1 to 20, both inclusive, and the decree fails to find the number of these notes which are unpaid, or the amount remaining unpaid on the notes secured by the trust deed.. The decree also orders the mortgaged land to be sold for the payment, among others, of notes 3 and 4, which the proof, not disputed, shows are paid. By the decree as amended the land is ordered sold for the payment of the notes held and owned by defendant in error and plaintiff in error Chapman, and orders the proceeds of the sale, after the payment of costs and expenses, to be applied to the liquidation of the amount due on the latter notes in the order in which they are numbered. It is said by defendant in error that Chapman is estopped from now disputing that which he caused to be done, and in the doing of which he acquiesced. We are not unmindful of the pertinency of the contention. But, so conceding, the plaintiff in error, David B. Lyman, trustee, urges the point as trustee in behalf of all those beneficially interested, and who are not before the court as parties, and of whom the court has no jurisdiction. We consider the attitude of trustee Lyman as in accord with the duty cast upon him by the law, to see to it that every reasonable and available means are exerted to protect the rights of the note holders in accordance with the conditions of

the instrument under which he acts. To his objection the court will give heed. That all the note holders, with the exception of Baird and Chapman, are ignored in this whole proceeding is patent, and that, without any right of priority and in the teeth of the express provision of the trust deed that the proceeds of the sale under foreclosure proceedings after payment of expenses should be applied "to pay the principal of said notes, whether due and payable by the terms thereof, or at the option of the legal holder thereof." There is no provision anywhere, either in the notes themselves or the trust deed securing them, giving one note priority over the other in the event of a foreclosure or nonpayment. The property had been divided into lots, and the terms of the provision for partial payments and releases simply provided a convenient method of disposing of the money thus received, without necessitating the finding of all the note holders every time a payment was anticipated and distributing the amount received among them in equal parts. This was no evidence of an intention to discriminate in favor of the holders of notes with the earlier numbers, because while the unpaid note holders had less land after a release on anticipated payments, they likewise had less debt to pay in case of the necessity of subjecting the remaining land to sale in a foreclosure proceeding. The bill in praying and the decree in ordering payment of the notes of Baird and Chapman in their numerical order violated the express terms of the trust deed securing them. The consequence of such erroneous proceeding uncorrected would be to deprive note holders to the amount of $9,000 of principal, besides accrued and accruing interest, to be defeated from payment of their contract portion of the price received at a foreclosure sale. For while it is true that the decree orders the overplus remaining after paying Baird and Chapman to be brought into court to abide its further order, which theoretically might produce enough to pay the remaining note holders, still, in practice, under the condition of the law which tends to discourage purchases at judicial sales, no "overplus" could be consistently anticipated.

For the errors indicated the decree of the Superior Court is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*