North Avenue Building and Loan Association and William Kemper, Trustee, Appellees, v. Christina Huber et al., Defendants.

### On appeal of Christina Huber, Appellant.

### Gen. No. 18,758.

1. MORTGAGES, § 163*—*effect on right to foreclose where transfer of securities is ultra vires.* Where the legal holder of promissory notes secured by trust deed sells the same to a building and loan association and both are made party complainants to a bill to foreclose the trust deed, *held* that though the attempted purchase of the

---

securities by the association was *ultra vires* and void, the legal owner was entitled to a decree of foreclosure under the bill.

2.  PLEADING, § 319*—*effect of reckless verification by solicitor.* The reckless verification of pleadings by a solicitor should not add anything to their evidentiary value against a party who is shown to have had no knowledge whatever of the averments contained therein.

3.  CORPORATIONS, § 342*—*effect where attempted purchase of notes secured by mortgage is ultra vires and void.* Where an attempted purchase by a building and loan association of promissory notes secured by a trust deed is *ultra vires* and void, the title remains in the legal holder the same as though no such transfer had been attempted.

4.  NOVATION, § 1*—*when transaction does not constitute.* Where a building and loan association makes an attempted purchase of promissory notes secured by a trust deed which is *ultra vires* and void, so that title remains in the legal holder, the fact that the mortgagors made payments of interest to the association for several years does not constitute a novation so as to create a new contract between the mortgagors and the association, which would be also *ultra vires* and void and thereby defeating the right of the legal holder to maintain foreclosure suit.

5.  NOVATION, § 1*—*essentials.* To constitute a novation, there must be a substitution of a new contract for an existing one, and the substitution must be made by contract to which all the parties to the old as well as the new contract must actually consent.

6.  NOVATION, § 1*—*essentials.* The original agreement of which novation is sought must be absolutely extinguished and a new agreement substituted for it, and the new agreement must be a valid, binding and enforceable contract.

7.  MORTGAGES, § 443*—*when holder of notes need not be made party in individual capacity.* Where the legal holder and owner of notes secured by a trust deed files a bill in the capacity of trustee to foreclose, he is entitled to a decree of foreclosure as holder and owner of the notes and trust deed, though he was not a party to the bill in his individual capacity.

8.  EQUITY, § 145*—*when bill may ask for alternative relief though the theories are inconsistent.* Under proper circumstances a bill in equity may be so framed as to ask for alternative relief even though the two theories are inconsistent with each other, provided the facts alleged show the complainant to be entitled to the relief sought by which every aspect of the case the court finds is sustained by the proof.

9.  MORTGAGES, § 439*—*effect of averments in bill as to whose use bill was filed.* The fact that a bill filed by the trustee for foreclosure contains a prayer for a decree finding that a co-complainant was equitably entitled to the money when collected, or any other prayer

44        APPELLATE COURTS OF ILLINOIS.

North Ave. Bldg. & L. Ass'n et al. v. Huber, 187 Ill. App. 42.

or averment with reference to whose use the bill was filed, is wholly immaterial to the question of the trustee's right to foreclose.

10. MORTGAGES, § 650*—*when mortgagor cannot complain of decree directing trustee to hold proceeds for use of another.* On appeal to review a foreclosure decree, a mortgagor cannot complain that the decree is erroneous in directing that the trustee receive and hold the money collected for the use of another party complainant, since such question does not concern the mortgagor.

11. MORTGAGES, § 670*—*when master's fees excessive.* Amount allowed as master's fees in a foreclosure proceeding where there was an original and re-reference to the master, *held* unwarranted and unreasonable.

12. MORTGAGES, § 632*—*when foreclosure decree awarding execution for deficiency erroneous.* Language in a foreclosure decree purporting to be a final order for execution against the mortgagor for a deficiency is erroneous, since no such execution can be awarded until a personal deficiency decree has been entered after the foreclosure sale.

13. MORTGAGES, § 427*—*limitations.* The payment of interest on a promissory note tolls the statute of limitations, and a suit to foreclose a trust deed securing such note may be begun at any time within ten years after the last interest payment is made.

14. LIMITATION OF ACTIONS, § 83*—*when rule that new promise must be made to legal holder of obligation inapplicable.* The rule that when a debt is barred by the statute of limitations a new promise in order to revive the obligation must be made to the legal holder of the obligation, or to his agent, is not applicable where the statute has not run against the debt, for the reason that it has been recognized as an existing obligation by the payment of interest.

Appeal from the Circuit Court of Cook county; the Hon. CHARLES. M. WALKER, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1912. Affirmed as modified. Opinion filed May 20, 1914. Rehearing denied June 4, 1914. *Certiorari* allowed by Supreme Court.

FREDERICK MAINS and WESLEY H. MAINS, for appellant.

CHRISTIAN MEIER and PAUL C. MEIER, for appellees.

MR. PRESIDING JUSTICE GRAVES delivered the opinion of the court.

On October 24, 1895, Christina Huber, the appellant, and John Huber, her husband, being indebted to E. S. Dreyer & Co. in the sum of $14,000 as principal

*See Illinois Notes Digest, Vols XI to XV, and Cumulative Quarterly, same topic and section number.

and $434 accrued interest thereon, and to Kemper Brothers in the sum of $4,000, executed their promissory note payable to the order of themselves for the sum of $18,000, due in five years from its date, with interest thereon at the rate of 6 per cent. per annum, payable semiannually at the office of Kemper Brothers, Chicago, Illinois. The installments of interest were evidenced by ten interest notes of that date also made payable to the order of the makers. They then indorsed both the principal and interest notes in blank, thereby making them negotiable by delivery. After so executing and indorsing these notes they delivered them all to William Kemper, one of the firm of Kemper Brothers, to whom they owed the $4,000 above referred to. On the same day they made, executed and delivered to the said William Kemper a trust deed conveying to him in trust certain real estate to secure the payment of the $18,000 principal note and the interest notes mentioned. Thereupon William Kemper gave to Dreyer & Co. a check signed in the name of Kemper Brothers on Foreman Brothers' bank for the sum of $14,434, and caused the obligation due from the Hubers to Kemper Brothers to be cancelled. The item of $434 for interest on the Dreyer obligation and the costs and expenses of having an abstract of title to the land covered by the trust deed brought down to date and examined by an attorney and the cost of recording the papers were afterwards paid to Kemper by the Hubers. At the time in question, William Kemper was the treasurer of an Illinois corporation known as the North Avenue Building and Loan Association  Whatever money came into his hands as such treasurer he deposited with the firm of Kemper Brothers until the same was called for by the association. He was personally financially responsible and was under bonds to the association as its treasurer. Kemper Brothers kept an account in Foreman Brothers' bank. Into this account they deposited all surplus funds in their hands regardless of the

source from which it was derived and against that account they checked for all purposes for which they desired to use money. The account of the association with Kemper Brothers was kept on the books of that firm. There was nothing on the books of the Foreman Brothers' bank to show what part of the money deposited there by Kemper Brothers, if any, came from the association or its treasurer. This course of business seems to have been with the knowledge and consent of the officers and directors of the association. At the time of the transaction related, there was on deposit with Kemper Brothers $8,185.88 of the funds of the association, and there was on deposit in the Foreman Brothers' bank a balance to the credit of Kemper Brothers of $17,047.25. On the day of the transaction between the Hubers and William Kemper he drew against this balance the $14,434 check given to Dreyer & Co., and gave other checks disconnected with that transaction for $519.61, leaving a balance of $2,093.64. There is nothing to show whether the check to Dreyer & Co. or the other checks were drawn first. None of the officers or directors of the association, except William Kemper, the treasurer, knew anything about this transaction until November 12, 1895, and there is nothing to show that he either had or undertook to exercise any authority on behalf of the association in that transaction. The association held regular weekly meetings of the directors. The minutes of the meeting held November 12, 1895, show the following:

"Motion made and seconded that we buy a $10,000 interest in an $18,000 mortgage against John Huber of William Kemper, with privilege of buying other interest of not less than $2,000 at a time. Carried."

The minutes of the meeting held November 18, 1895, show the following:

"Motion made and carried that we buy an additional interest of $4,000 in addition on the $10,000 we have in mortgage of John Huber. Carried."

And the minutes of the meeting held September 8, 1896, show the following:

"Motion made and seconded that we buy the $4,000 balance in the $18,000 mortgage from William Kemper. Carried."

Vouchers for $10,000, $4,000 and $4,000 dated respectively November 12, 1895, November 18, 1895, and September 8, 1896, were issued and delivered by the corporation to William Kemper, and are as follows:

"$10,000.00/100                              No. 2319.
                   CHICAGO, November 12th, 1895.

The Board of Directors of the North Ave. Building & Loan Association orders the payment to Wm. Kemper of the sum of Ten Thousand—/100

Dollars for mortgage of John Huber.

Loan No..........            Book No........
ERNEST ULBRIGHT,             Jos. GRASEN, Jr.
   President.                      Secretary."

Indorsement on back:

"WILLIAM KEMPER,
                   CHICAGO, November 18, 1895.

This order is drawn to buy a $10,000 interest in an $18,000 trust deed signed by John Huber and dated October 24, 1895, we holding the papers and Wm. Kemper to receive interest on $8,000.

                   NORTH AVE. BLDG. & LOAN ASS'N,
                            ERNEST ULBRIGHT, Pres.
                            JOS. GRASEN, Jr., Sec."

"$4,000.                                     No. 2331.
                   CHICAGO, Nov. 27, 1895.

The Board of Directors of The North Avenue Building & Loan Association orders the payment to William Kemper of the sum of Four Thousand——/100

Dollars for mortgage of John Huber.

Loan No........            Book No........
ERNEST ULBRIGHT,           Jos. GRASEN, Jr.,
   President.                    Secretary."

Indorsed:

"WILLIAM KEMPER,

One month interest due to William Kemper on this order."

"$4,000                                      No. 2596.

48 Appellate Courts of Illinois.

North Ave. Bldg. & L. Ass'n et al. v. Huber, 187 Ill. App. 42.

Chicago, September 8th, 1896.
The Board of Directors of The North Avenue Building & Loan Association orders the payment to William Kemper of the sum Four Thousand——/100 Dollars for balance of $18,000 mortgage.

Loan No........    Book No........
Ernest Ulbright,    Jos. Grasen, Jr.,
    President.    Secretary."

Indorsed:
"William Kemper."

There is no evidence that the Hubers knew anything about the sale of this mortgage to the association until the transaction was completed. Neither of the Hubers was a member of the association or owned any of its stock. The association collected all the interest on the $18,000 loan up to April 24, 1910, and paid to William Kemper the proportion of it earned by the part of the loan carried by him while he so carried it. No part of the $18,000 obligation has been paid. The interest on it accruing after April 24, 1910, is also unpaid.

On November 17, 1910, The North Avenue Building & Loan Association and William Kemper, as complainants, filed their bill in chancery in which Christina and John Huber are made the principal defendants, and one Frank Cuneo is also made a defendant, because of some undisclosed claimed interest. In this bill the complainants pray for a decree requiring the said Christina and John Huber to pay to the association the principal sum of $18,000 and accrued interest thereon and the costs, including master's and solicitors' fees, and in default thereof that the trust deed given to William Kemper be foreclosed and the premises sold, etc. In this bill it is alleged that the note in question was given for a loan made by the makers thereof from the complainant, The North Avenue Building & Loan Association. This bill was signed by the complainants by their solicitors and was verified by one of the solicitors, who afterwards testified that he prepared the bill and verified it without having con-

ferred with the association or any of its officers in relation to the facts averred in the bill; that he gathered the facts averred from the abstract of title, which did not show who made the loan; that he did not know he had misstated the facts until the argument of the demurrer to the original bill; that he then inquired of the secretary of the association as to the facts and obtained the original papers and drafted an amended bill. There is no averment in the original bill to indicate why William Kemper was made a complainant. After several demurrers and amendments to the bill issues were formed on an engrossed amended bill, wherein the North Avenue Building & Loan Association, a corporation organized under an act of the Illinois legislature entitled "An Act to enable Associations of persons to become a body corporate to raise funds to be loaned only among their members," in force July 1, 1879, and William Kemper, as trustee, are made the complainants. In this bill it is averred that the averment in the original bill that the loan referred to therein was made by the association to the Hubers was erroneous and arose from a misunderstanding of the facts by the solicitors who drew the same and were made without the knowledge of the complainants, and that the true facts are that Christina and John Huber, being indebted to William Kemper, delivered to him the promissory note in question for $18,000, and that to secure the payment of that note and interest the Hubers conveyed to William Kemper, as trustee, the property in question; that the transaction was had between the Hubers and William Kemper as an individual and not with the association or with him as an officer of the corporation; that the association having on hand certain surplus funds for which there was no demand from the members of the association, and which amounted to less than twenty per cent. of the assets of the association, purchased from William Kemper and caused to be delivered to the association

50 APPELLATE COURTS OF ILLINOIS.

North Ave. Bldg. & L. Ass'n et al. v. Huber, 187 Ill. App. 42.

the Huber note and that the association is now the owner thereof. Then follows the usual averments of default, etc. The prayer is, first, that the complainant, the North Avenue Building & Loan Association, be decreed to be the owner and holder of the note and trust deed; that the defendants be decreed to pay to that complainant the amount due on that note as principal and interest and that complainant be decreed to have a first lien therefor on the premises described in the trust deed, and that in default of the payment of the amount due on said note the "mortgaged" premises be sold to satisfy the same, and for a deficiency judgment; or, second, that in case the court finds that the association is not the legal holder of the note and trust deed, then, that the court also find that William Kemper is the owner thereof and that the premises be sold to satisfy the amount found due on said note, together with costs, expenses and solicitors' fees, and the proceeds paid to and held by William Kemper, *as trustee*, for the use of such person as may be equitably entitled thereto, etc., and concludes with a prayer for general relief.

Personal service of summons was had on Christina Huber and Frank Cuneo. John Huber not being personally served or found, notice by publication was duly given as to him.

The bill was taken as confessed as to John Huber and Frank Cuneo. Christina Huber answered. By her answer she admitted that the complainant association is a corporation organized as averred in the bill; admits that in the original bill it was averred that the loan was made by the association, but denies that such averment was made by mistake or through misunderstanding of the facts by the solicitor and without the knowledge of complainants, and avers that such allegation was made in the original bill and the bill then verified with full knowledge of all the facts, and that the same was persisted in until August 12, 1911, and that such admission so persisted in is an admission of record and binding on complainants, and

should estop them from showing the facts to be as alleged in their engrossed amended bill; that the $18,-000 note and the trust deed were made and delivered to William Kemper as the authorized agent and officer of the complainant association, and for the association upon the payment by the association of $18,-000 of outstanding obligations of the Hubers; and that such association was the real owner of such note and trust deed from the time it was so delivered up to and at the time suit was brought thereon. That as such association was an Illinois building and loan corporation, as alleged in complainants' bill, and as the Hubers were not members thereof, the act of the association in loaning the money to them and taking the note and trust deed therefor was *ultra vires,* prohibited by statute and null and void; that if William Kemper ever owned the note and trust deed and transferred the same to the association such transfer operated as a satisfaction of his interest therein and became a completed contract of novation and that such contract was likewise *ultra vires,* prohibited by statute and null and void. The defendant further sets up in her answer laches, the statute of limitations and an adequate remedy at law. It is not denied in the answer that the Hubers borrowed the $18,000 from some one; that they executed the note and trust deed and paid the interest on the loan for fifteen years. To this answer a general replication was filed and the cause was referred to a master in chancery to take proofs and report his conclusions of law and fact.

The master in his final report finds that the original transaction in which the Hubers borrowed the $18,000 and gave the notes and trust deed was had with William Kemper in his own behalf; that the money advanced was his own personal money; and that the debt evidenced by the note and trust deed was due from the Hubers to him personally in the first instance, and was a valid indebtedness and that the principal has not been paid.

He further finds that afterwards and on November 12, 1895, the complainant association purchased of Kemper a $10,000 interest in the loan and paid him $10,000 therefor, and that later and on November 18, 1895, it purchased of him an additional $4,000 interest therein and paid him $4,000 therefor, and that still later and on September 8, 1896, it purchased of him the remaining $4,000 interest therein and paid him $4,000 therefor and thereupon became the sole owner of the said securities.

He further finds that all the interest notes were paid at maturity by the Hubers to the association and when so paid the association cancelled them and delivered them to the Hubers; that interest on the principal sum at the rate of six per cent. per annum has been paid by the Hubers to the association up to April 24, 1910, but that no interest has been paid since that date.

The master further finds that the association is a corporation organized under a general law of Illinois, entitled "An Act to enable associations of persons to become a body corporate to raise funds to be loaned only among their members," and that the defendants were not members of that association.

The master further finds that the purchase of the securities by the association from Kemper was not a loan, but was an attempted investment not prohibited by the statute, but "was *ultra vires* beyond the power of the association" and void; that the association did not thereby acquire title to the securities, but that the title thereto remained in Kemper, *in trust in equity in favor of the association;* that the attempted purchase of the securities by the association from Kemper was no concern of the Hubers and did not render the note or trust deed void or relieve the Hubers from liability thereon; that Kemper is entitled to foreclose the trust deed and to recover the principal indebtedness and the unpaid interest thereon and solicitors' fees; that there is due to William Kemper as trustee for the association on the note for princi-

pal $18,000, for interest $1,965, and for solicitors' fees $200, or a total of $20,165, and that he has a lien as such trustee on the premises described in the trust deed for that amount; that Christina Huber is personally liable to him for that amount; and that William Kemper as trustee for the use of the association is entitled to foreclose the trust deed in question.

The master further finds that the allegation in the original bill that the loan was made by the complainant association was a mistake of the solicitor and arose from a misunderstanding of the facts by him and was made without the knowledge of the association or its officers.

Objections of Christina Huber to substantially every finding of the master were duly filed and were overruled by the master. Later, those same objections were ordered to stand as exceptions in the Circuit Court to that report, where they were again overruled and a decree of foreclosure was entered following the findings of the master. Christina Huber has brought the record here by appeal and has assigned thirty-five errors covering eighteen pages of printed matter in the abstract.

The question sought to be presented by the objections and exceptions to the master's report and by the assignments of error may be classified under the following heads.

Is the finding of the master and the court that the original transaction was between the Hubers and William Kemper, acting for himself, supported by the evidence, or should the finding have been that the transaction was really between the Hubers and the association acting through William Kemper as its agent and ratified by it?

Assuming that the original transaction was had between the Hubers and Kemper acting for himself as the master and the court found, and that the attempted purchase by the association from Kemper of

the securities was *ultra vires* and void, is Kemper still the owner of the note and is he entitled to collect it in a foreclosure proceeding? Has the association any interest in the securities or any fund collected thereon that can be determined and decreed to it or recognized in a foreclosure proceeding? Can Kemper, as the legal owner of the securities, have a decree of foreclosure on the bill as it stands? Can he collect the solicitors' fees provided for in the trust deed? Is the provision of the decree awarding execution for any deficiency that may exist after the sale of the real estate described in the trust deed correct? Are the master's fees correctly taxed? Is the action barred by laches? Is it barred by the statute of limitations?

We think the findings of the master followed by the court in the decree that the original transaction was between the Hubers and William Kemper as an individual; that the loan was made by him individually to the Hubers; that the notes were delivered to Kemper by the Hubers as evidence of their indebtedness to him; that when so delivered to him they were his property; that the trust deed was made to secure the payment of the said notes to William Kemper; that thereafter the complainant corporation undertook to purchase the notes of Kemper as an investment and that it did finally obtain possession of the same and paid Kemper therefor $18,000 in cash in three instalments and thereafter claimed to own the same are amply supported by the evidence.

William Kemper so testified and he was corroborated by subsequent events shown in evidence, as well as the record books of the association which clearly show that the association came into the transaction for the first time on November 12, 1895, as the purchaser of a little more than a one-half interest in the note which was then recognized as and which was in fact an existing obligation. The only circumstances shown in evidence that tend in the least to contradict that proof are, first, that Kemper in making up the fund loaned

to the Hubers drew on an account in the bank that was made up in part of moneys originally belonging to the association; and, second, that when the original bill was filed it contained an allegation to the effect that the loan had been originally made by the association to the Hubers. Neither of these circumstances when understood tend to discredit the positive testimony of Kemper that he made the loan. The way in which the funds of the association became part of the account from which Kemper drew the money loaned the Hubers is shown in the foregoing statement of facts. By drawing the $14,434 paid to Dreyer & Company out of the Foreman Brothers' bank, the account of the association with Kemper Brothers was not reduced in the least. The association still had on deposit with Kemper Brothers subject to call undiminished the $8,185.88, the same as before the Dreyer check was cashed, and there is nothing in this record to indicate that they were not amply able to produce it on call. Besides that, if William Kemper had feloniously drawn from Kemper Brothers the entire funds of the association, and had deliberately loaned the same to the Hubers as his own, the transaction would not have been a loaning by the association. If he had undertaken to act for the corporation in making the loan, it would still not have been its contract, for there is nothing in this record to indicate that he had any authority whatever to make loans for the association. Still another circumstance shows it was not a loan by the association, and that is found in the fact that the loan was for $18,000, while all the funds the association is shown to have then had was but $8,185.88.

The allegation in the original bill to the effect that the loan was made by the association to the Hubers is shown to have been made by the solicitor who framed the bill without having had any consultations with the officers of the corporation as to the facts. It is also disclosed by the evidence that he relied on the papers and abstract for the facts. There was nothing on the

face of the papers to indicate to him that the loan had first been made by Kemper.

The note was made payable to the makers and was indorsed by them. Being so made and indorsed, it was negotiable by delivery and did not need to be and was not in fact indorsed by Kemper in transferring it. The fact that the trust deed was made to Kemper as trustee was not unusual on the assumption that the association had made the loan. In fact, it is the well-known usual custom to name some one other than the holder of the obligation, trustee in a trust deed. It was, therefore, not surprising that being handed the papers by the association, and directed to bring foreclosure proceedings thereon, that he should conclude that the holder of the note was the party who had loaned the money. The bill was verified by the same solicitor who prepared it, and while the practice of personally verifying papers, indulged in by some attorneys, is pernicious and should be condemned, particularly when they have no personal knowledge of the facts contained therein, still we are unable to see why the reckless verification of pleadings by the solicitor should add anything to their evidentiary value against a party who is shown to have had no knowledge whatever of the averments contained therein. The holdings of courts of last resort in the various jurisdictions of this country are not in harmony on the question of how far, if at all, a party should be bound by the recitals in pleadings that have been amended by leave of court, but it is no longer in doubt in this State. In *Wenegar v. Bollenbach*, 180 Ill. 222, our Supreme Court held that where an original bill not sworn to *by the party* had been amended by leave of court it ought not to be admitted in evidence against the pleader, and that it was reversible error for the court to give weight to alleged admissions supposed to be contained in the original bill.

There is no assignment of error challenging the correctness or propriety of the finding of the court

that the transaction between the association and William Kemper, whereby the association obtained from Kemper the notes of the Hubers and Kemper obtained the $18,000 of the association, was *ultra vires,* null and void. We, therefore, are not called upon to determine that question. Neither do we decide whether that question was properly before the Circuit Court for determination. Appellant takes the somewhat novel position that even if the original transaction was a bona fide loan from Kemper to the Hubers, and the notes in the hands of Kemper represented a bona fide debt due from the Hubers to him, still that by the abortive attempt on the part of the association to purchase the securities from Kemper, the once valid notes and trust deed became and thereafter remained void and worthless paper that could not be made the basis of a foreclosure suit to recover the $18,000, which she admits she and her husband received and have never paid back to any one. In support of that contention, counsel has evolved the theory that the transaction between Kemper and the association, afterwards assented to by the Hubers by paying to the association interest for a time, became by the doctrine of novation a new contract between the Hubers and the association, which was prohibited by statute, was *ultra vires* and void. The theory has the merit of newness and novelty, but is not tenable. In the first place, if the transaction by which Kemper attempted to transfer title in the notes to the association is void, as appellant contends, and the court found, then the entire situation remains the same as if the transfer had never been attempted and the notes are still the property of Kemper. Next, there is in this transaction, so far as we are able to discover, none of the elements of novation. Novation is the substitution of a new contract for an existing one. Such substitution must be made by contract to which all the parties to the old as well as to the new contract must actually consent. The original agreement of which novation is sought

must be absolutely extinguished and a new agreement substituted for it. *Karraker v. Eddleman,* 101 Ill. App. 23. The new contract which is substituted for the old one must be a valid, binding and enforcible contract. 29 Cyc. p. 1134, E; *Spycher v. Werner,* 5 L. R. A. 414, 74 Wis. 456; *Clark v. Billings,* 59 Ind. 508; *Bristol Milling & Mfg. Co. v. Probasco,* 64 Ind. 413.

In the case at bar, the original contract was contained in the notes and trust deed. *Boley v. Lake St. El. R. Co.,* 64 Ill. App. 305.

This contract was never extinguished. No new valid contract was ever substituted therefor. It was on this contract that interest was paid from year to year until April 24, 1910.

William Kemper, being the legal holder and owner of the unpaid $18,000 note, is in law and by the express terms of the trust deed, under the uncontradicted facts in this record, entitled to foreclose the same. It is, however, strenuously contended by appellant that even if that is true he cannot under the bill, as framed, have any relief as the holder and owner of the note and trust deed, because he is not made a party to the bill in his individual capacity and because by the bill the complainants insist the securities belong to the association. William Kemper first came into court in this case in his individual capacity as joint complainant with the association, seeking to foreclose the trust deed. By leave of court he so amended his bill as to appear therein as complainant in his capacity of trustee. The facts are all set out in the bill showing the entire transaction to be as the court finally found them to exist. It is there fully shown that the William Kemper who loaned the money to the Hubers and the William Kemper who is named as trustee in the trust deed are one and the same person and that the Hubers knew it. Those facts being so shown, he need not formally appear in the suit in both capacities. *Dearlove v. Hatterman,* 102 Ill. App. 329; *Chandler v. O'Neil,* 62 Ill. App. 418. When a person is in court,

he is there for all purposes, both as an individual and in his representative capacity. *Breed v. Baird,* 139 Ill. App. 15; *Harris v. Lester,* 80 Ill. 307.

It is true the complainants conclude from the facts averred in the bill that the association is the owner of the securities and pray that Kemper may be decreed to hold the money, when collected, for its use, but they say in the alternative that, if the court does not agree with their conclusions in that respect, then they insist William Kemper is the legal owner of the securities and that a foreclosure of the trust deed should be decreed to him. The bill concludes with a prayer for general relief. Under proper circumstances a bill in equity may be so framed as to ask for alternative relief, even if the two theories are inconsistent with each other, provided the facts alleged show the complainant to be entitled to the relief sought by whichever aspect of the case the court finds is sustained by the proof. *Henderson v. Harness,* 184 Ill. 520. Kemper, as trustee under the trust deed, was entitled to a decree of foreclosure at the instance and for the benefit of the legal holder of the note, whether it should be found to be the association or himself as an individual, and whether the court determined who was equitably entitled to the money when collected or not. The fact that the bill contains a prayer for a decree finding that the association was equitably entitled to the money when collected, or any other prayer or averment with reference to whose use the bill was filed, is wholly immaterial to the question of Kemper's right to foreclose the trust deed.

If Kemper collects this money by foreclosure or otherwise, he will be bound to turn it over to the persons entitled to it, regardless of any averments he has made in the bill as to whose use the same was filed. If in the transaction between the association and Kemper he has obtained, money belonging to the association which in equity and good conscience he ought to return, that is a matter between him and the association.

Those are questions that do not concern appellant. *Schott v. Youree,* 142 Ill. 233-241; *American Exp. Co. v. Haggard,* 37 Ill. 465-473; *Carr v. Waugh,* 28 Ill. 418-423; *Brownell Improvement Co. v. Critchfield,* 96 Ill. App. 84-90; *Atkins v. Moore,* 82 Ill. 240. In the last case cited, the court on page 241 of the opinion announces the general rule to be that "the party in whom is the legal right of action may, as respects the defendant, bring his suit for the use of whatever person he likes; that it is no concern of the defendant for whose use the action is brought." For the same reason it is no concern of appellant whether the decree is or is not erroneous in directing that Kemper receive and hold the money collected by this proceding *for the use of the association,* and she cannot be heard to question it here.

The allowance of $200 to complainant to pay his solicitors' fee was in pursuance of the express terms of the trust deed and was proper.

Appellant complains that the charge made by the master for fees is unreasonable and exorbitant. There was an original and a re-reference to the master. He charged and was allowed on the original reference for taking and certifying eighty pages of testimony at 15 cents per one hundred words, $30; for stenographer's charges for reporting such eighty pages of testimony at 15 cents per 100 words, $30; and for forty seven hours' time for service at $5 per hour, $235, a total of $295. On the re-reference he charged and was allowed for taking and certifying the seven pages of testimony, $2.61; for stenographer's charges for reporting said seven pages, $2.61; preparing and serving notices, $4; and for thirty-seven hours' time, at $5 per hour, $185, a total of $194.22. It will be observed that under the re-reference but seven pages of testimony was taken. There was no great change made in the issues of law or fact on the re-reference. We have examined both of these reports carefully and are driven to the conclusion that the charges made by

the master are unwarranted and unreasonable, and that the amount charged for time spent in considering the evidence and in making the first report is ample to compensate him for all such services rendered on both references. The decree of the Circuit Court will, therefore, be modified so as to allow him for such services on both references the sum of $235, thereby reducing the fees allowed him by $185. This practice is in accord with the views expressed in the following cases: *Biewer v. Mueller*, 254 Ill. 315-324; *Keuper v. Mette's Unknown Heirs*, 239 Ill. 586. See also *Manowsky v. Stephan*, 233 Ill. 409, and *Wirzbicky v. Dranicki*, 235 Ill. 106.

The decree contains the following: "In case any deficiency is shown in the amount due complainant, William Kemper, as trustee for the use of the complainant association, he shall be entitled to execution against the defendant, Christina Huber, who is personally liable therefor." If this be construed as a final order for execution, it is erroneous. No execution can be awarded until a personal decree has been entered, and a personal deficiency decree cannot be entered until by a sale of the premises and a report thereof to the court has been made, and the amount of the deficiency has been thereby ascertained and decreed. The decree will, therefore be modified by eliminating the language quoted. *Springer v. Law*, 185 Ill. 542-545; *Cook v. Moulton*, 64 Ill. App. 429-431; *Rooney v. Moulton*, 60 Ill. App. 306; *Bouton v. Cameron*, 205 Ill. 50-68.

It is urged that the action is barred by the statute of limitations. While the debt has been due for more than ten years, the evidence shows and it is admitted that the interest on it was paid by the Hubers to April 24, 1910, which payment is evidenced by indorsements in writing made from time to time on the back of the note. The first interest payment that was not made was due October 24, 1910. This suit was begun November 17, 1910, less than one month after the default

in the interest payment. The payment of interest on a promissory note tolls the statute of limitations, and a suit to foreclose a mortgage securing such note may be begun at any time within ten years after the last interest payment is made. *Stein v. Kaun*, 244 Ill. 32-37. The authorities cited by appellant to the effect that when a debt is barred by the statute of limitations a new promise in order to revive the obligation must be made to the legal holder of the obligation, or to his agent, have no application here. The statute never ran against this debt. The note was always recognized by the Hubers as an existing obligation, as is evidenced by the regular payment of interest to April 24, 1910.

Appellant objects that the master found that $17.20 was paid by Kemper for a continuation of the abstract and $10 for attorneys' fees in examination of the same, and failed to find that the same was repaid by the Hubers. While the master does not expressly find that these items were repaid by the Hubers, he does find they were charged to them by Kemper. In any event, nothing is predicated in the decree on this finding. The amount for which foreclosure is decreed is made up of the principal debt of $18,000, interest thereon accrued and unpaid amounting at the date of the decree to $1,965, and $200 solicitors' fees. The $17.20 for the continuation of the abstract and the $10 attorneys' fees for examination of the same are not included as part of the debt due from the Hubers. Appellant will pay three-fourths of the costs of this appeal and appellees will pay one-fourth of the same.

Finding no reversible error in the record, the decree, modified as above suggested, is affirmed.

*Decree affirmed as modified.*